ALAN GOODRICK *et al.*, Plaintiffs, *v.* THE BASSICK COMPANY *et al.*, Defendants.—(CUNNINGHAM BROTHERS, INC., Third-Party Plaintiff-Appellant, *v.* MISSISSIPPI VALLEY ERECTION COMPANY OF ILLINOIS, Third-Party Defendant-Appellee.)

First District (5th Division)   Nos. 76-525, 77-1187 cons.

Opinion filed March 10, 1978.—Rehearing denied April 24, 1978.

Willis R. Tribler and James Kirk Perrin, both of Chicago (Haskell & Perrin, of counsel), for appellant.

French & Rogers, of Chicago (Richard G. French and Thomas A. Reed, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

In proceedings brought under the provisions of the Structural Work Act

(Ill. Rev. Stat. 1973, ch. 48, par. 60 *et seq.*) a directed verdict was entered against defendant Cunningham Brothers, Inc. (Cunningham), and the jury found against the other defendant, The Bassick Company, a Division of Stewart-Warner Corporation (Bassick) and awarded damages to each plaintiff against both defendants.

Bassick was the owner of the premises and Cunningham the general contractor for the work being performed. Cunningham filed a third-party action for indemnification against plaintiffs' employer, Mississippi Valley Erection Company of Illinois (Mississippi), which was tried with plaintiffs' action, and the jury found in favor of Mississippi. Cunningham, however, has appealed only from the judgment in the third-party action in favor of Mississippi and presents the following issues for review: (1) whether its third-party action was prejudiced by the directed verdict against it in the original action of plaintiffs and by the refusal of the court to give its Instruction 7; and (2) whether the verdict in the third-party action was against the manifest weight of the evidence. Cunningham has not appealed from the judgment entered against it in favor of plaintiffs.

Cunningham contracted to build two additions to the Bassick plant and subcontracted the erection of required steel structural work to Mississippi. During the course of construction, three vertical steel columns had been set in place by Mississippi with beams spanning the distance between them. Plaintiffs, Mississippi iron workers, were on the beams preparing to connect them to columns and, when it was found that the center column was a half-inch out of plumb in an easterly direction, Mississippi used guy wires with a ratchet device called a come-along to pull the column into plumb. In doing so, they over-compensated and pulled the top of the column three-quarters of an inch out of plumb to the west. No come-along had been set up to pull the column back to the east, and Mississippi decided to use the boom of a 60-foot crane to push the column into proper position. After achieving plumb, the iron workers attempted to maintain this position by tightening the securing nuts at the base of the column and by welding the bar joist to the columns. The securing nuts were tightened, but when the boom was pulled away the beam snapped back to the west, and the southern column toppled to the east shearing off the beam on which plaintiffs stood. They were injured when thrown to the ground.

It appears that in accordance with Cunningham's plans and specifications for steel erection, a concrete footing or pier was constructed as a foundation for each steel column and two anchor bolts were set in each footing. One bolt was positioned toward the eastern edge of the form and the other toward the western edge, and when cement was poured into the form both bolts protruded vertically from the surface of the concrete pier. Originally, grout (cement mixed with sand and water)

was to have been poured between the upper surface of each pier and a steel setting plate containing two holes which allowed for the protrusion of the anchor bolts. Grout would have bonded the setting plate to the pier and provided support over the entire surface for the rest of the structure.

To avoid delay, Cunningham ordered Mississippi to erect the vertical steel columns without grouting and, to compensate, the iron workers used a stack of washers encircling each anchor bolt as a base on which the setting plates were balanced and they then shimmied the open spaces with wooden material found around the jobsite. Attached to the bottom of each steel column was a base plate with the same dimensions and configuration as the setting plate. These plates were to be joined by fastening a securing nut downward on each anchor bolt until it fit tightly against the base plate. In compliance with Cunningham's directions, the anchor bolts were set to a higher elevation than designated by the plans and, because the bolts did not reach the base plate, the securing nuts could not be tightened. To overcome this problem, Mississippi sleeved the anchor bolts with pipe and each securing nut was screwed down to the upper edge of the length of pipe rather than the base plate.

Clinton Warren, who was in charge of the project for Cunningham, testified that it (as general contractor) was responsible for the progress of the work, the means, methods and techniques employed in achieving such progress, and the safety of the workers, but that it relied on the steel erection subcontractor for the bracing and plumbing of columns. Warren testified that to avoid delay, he decided not to grout. He knew, however, that washers were being used to compensate for the lack of grout, that the anchor bolts were higher than designated, that pipe sleeves were being used to compensate for the excess in height, and that iron workers would be on the beams during a dangerous stage of construction. Warren also testified that the absence of grouting and the length of the anchor bolts was not caused by nor were they the responsibility of the iron workers and that he had acquiesced in the means which the Mississippi crew had employed to overcome these conditions, except that he was unaware that a boom crane was being used to plumb a column—a practice he would have stopped had he known of it. In his opinion, the southern column would not have fallen had Mississippi used heavier bracing; *i.e.*, more guy wires and steel rather than wooden shimming.

After the incident in question, Cunningham provided steel shimming to be used between the concrete footings and the setting plates and Mississippi, at its own expense, erected the fallen column.

Harry I. Scoggin, plaintiffs' architectural and structural engineering expert, testified that a hinge effect was created when the middle column, which was connected to the southern column by a beam, was moved.

Although he and other witnesses opined that the use of a boom crane to plumb a column was not a good construction practice, Scoggin viewed its use here as insignificant because, in his opinion, the failure of the southern column was primarily due to the lack of grouting under the setting plate to resist overturning forces. It was his further opinion that the toppling of the column was secondarily caused by the use of thin-walled conduit to provide a sleeve between the base plate and the securing nut and by the absence of heavier bracing to support the column's top-heavy construction. Scoggin considered the pipe sleeve as the weakest link in the column's construction which, combined with the lack of grout, greatly reduced the amount of lateral force needed to topple it.

To the contrary, Jack R. Janney, Cunningham's expert in architectural and structural engineering, testified that whether the southern column had been grouted or not made no difference in its ability to withstand overturning forces in an easterly or westerly direction. Although he did not express an opinion as to the cause of the incident in question, he testified that the absence of grouting could not have been a cause where the securing nuts are tightened down to the base plate.

At the close of all the evidence, after the trial court directed the verdict in favor of plaintiffs and against Cunningham, an instruction concerning this direction was tendered by plaintiffs, in pertinent part as follows:

> "You are instructed to find for the plaintiffs and against the defendant, Cunningham Brothers, Inc., on the issue of liability and to determine as to that defendant the issue of damages only."

Cunningham noted that this instruction clarified the situation for the jury and, as to its third-party action, tendered the following given instruction which read in pertinent part:

> "Second, that Cunningham Brothers, Inc. had been damaged when found liable to the plaintiffs Alan Goodrick and Jon Milota.
>
> Third, that the primary negligence of the third party defendant was a proximate cause of such damage to Cunningham Brothers, Inc.
>
> Fourth, that the liability of Cunningham Brothers, Inc. is secondary." (Illinois Pattern Jury Instructions, Civil, No. 21.05 (2d ed. 1971) modified.)

The trial court, however, refused to give Cunningham's Instruction 7, which would have informed the jury that under Illinois law an employee cannot sue his employer for injuries sustained within the scope of his employment.

OPINION

Cunningham first contends that the trial court prejudiced the third

party action by the direction of the verdict against it in the original action, and that such prejudice was compounded by the refusal to instruct the jury that plaintiffs could not bring suit against Mississippi.

■■ Initially, it should be noted that as Cunningham did not appeal the judgment in the original action, it cannot question the propriety of its entry. (*Virginia Corp. v. Russ* (1975), 27 Ill. App. 3d 608, 327 N.E.2d 403.) Thus, the question before us is whether, assuming the propriety of its entry, the directed verdict in the original action denied Cunningham a fair trial in its third-party action.

During oral argument in this court, Cunningham took the position that as the directed verdict inferred that defects in the southern column's foundation; *i.e.,* lack of grouting, excessive elevation of the anchor bolts, and the absence of steel shimming to the exclusion of Mississippi's use of the boom crane for plumbing purposes or its failure to attach more guy wires to the southern column caused the incident in question, no instruction could be given to the jury which could dissipate the prejudicial effect of the directed verdict. We cannot agree, for several reasons.

First, we do not believe such an inference was raised by the direction of the verdict. Contrary to Cunningham's assertion, the evidence does not establish mutually exclusive causes of the failure of the southern column. Plaintiff's expert witness stated that the use of the crane in the circumstances in question was not a causative factor, and he attributed the failure of the southern column to both primary (lack of grouting) and secondary (use of electrical conduit as pipe sleeves and the absence of heavier bracing) causes. While the use of the crane to plumb was criticized as a poor and/or unsafe construction practice, no one (including Cunningham's expert) opined that the crane caused the column's failure. Numerous witnesses, including Mississippi iron workers, Cunningham's on-site supervisor, and a Federal safety inspector offered opinions that one or more of the causative factors enunciated by plaintiffs' expert had caused the failure of the column either singly or collectively. Thus, while the evidence before the jury may have excluded the use of the crane as a causative factor, the direction of the verdict in our opinion did not operate to exclude the use of the crane or the absence of more guy wires to further brace the column as causes of the incident in question.

■■ Second, during the conference on instruction, Cunningham suggested modifications to plaintiffs' instruction which informed the jury of the direction of the verdict and, after these modifications were accepted, Cunningham noted that the instruction clarified the situation for the jury. Its position on appeal that no instruction could clarify the situation is in direct opposition to that espoused at trial and therefore cannot be maintained. *Woman's Athletic Club v. Hulman* (1964), 31 Ill. 2d

449, 202 N.E.2d 528; *Commercial Discount Corp. v. Bayer* (No. 77-218, January 13, 1978), 57 Ill. App. 3d 295, 372 N.E.2d 926.

■■■ Moreover, although during oral argument Cunningham agreed that a severance was the only action the court could have taken to obviate the alleged prejudicial effect of the directed verdict, it did not move for a severance during the trial and it cannot now complain. (See *Virginia Corp. v. Russ.*) Furthermore, even if the third-party action had been severed, the next jury necessarily would have been instructed that Cunningham had been held liable to plaintiffs (Illinois Pattern Jury Instructions, Civil, No. 21.05 (2d ed. 1971)), and since, as noted above, the direction of the verdict did not by implication exclude any evidence from the jury's consideration, the question of whether a severance would have been the wiser course is abstract. (See *Harney v. Cahill* (1965), 57 Ill. App. 2d 1, 206 N.E.2d 500.) For the foregoing reasons, we do not believe that the entry of the directed verdict in the original cause prejudiced the third-party action.

We next consider whether the refusal to give Cunningham's Instruction 7 denied it a fair trial.

An instruction is proper which conveys to the jurors the correct principles of law applicable to the evidence submitted to them. (*LeMaster v. Chicago Rock Island & Pacific R.R. Co.* (1976), 35 Ill. App. 3d 1001, 343 N.E.2d 65.) A party to a lawsuit is entitled to instructions on its theory of the case when that theory is supported by the pleadings and evidence but, where no prejudice is shown, the refusal to give an instruction is not reversible error. *Winston v. Chicago Transit Authority* (1971), 2 Ill. App. 3d 151, 276 N.E.2d 65.

■■ Here, during voir dire, Mississippi informed prospective jurors that it was a defendant in the third-party action but not a party to the original cause. Later, Cunningham, in the course of its opening statement, told the jury that plaintiffs could not directly sue their employer, Mississippi. The latter moved for a mistrial and, in denying that motion, the trial court explained to the jurors that it alone would instruct them as to the law. Thereafter, the court refused Cunningham's Instruction 7, that under the law plaintiffs could not sue Mississippi. Cunningham admits that it is within the trial court's discretion to determine whether an instruction is applicable to the pleadings and the evidence (Ill. Rev. Stat. 1975, ch. 110A, par. 239(a)) and, although it has made no showing of the instruction's relevance to the pleadings and evidence, Cunningham insists (relying on *Central Illinois Public Service Co. v. Badgley* (1974), 24 Ill. App. 3d 294, 321 N.E.2d 26) that such discretion was abused here because considerable emphasis had been placed on the fact that plaintiffs had not sued Mississippi. Our review of the record reveals that any such emphasis

was attenuated and, furthermore, we do not believe that *Central Illinois Public Service Co. v. Badgley* excuses a litigant from showing the relevance of its instruction to the pleadings and the evidence. As Cunningham has made no such showing, we see no abuse of discretion in the refusal of its Instruction 7.

Cunningham next contends that the verdict denying it indemnification was against the manifest weight of the evidence. We disagree.

■■ The manifest weight of the evidence is that which is "the clearly evident, plain and indisputable weight of the evidence." (*Spankroy v. Alesky* (1977), 45 Ill. App. 3d 432, 436, 359 N.E.2d 1078, 1080.) As stated in *Nowakowski v. Hoppe Tire Co.* (1976), 39 Ill. App. 3d 155, 158, 349 N.E.2d 578, 582:

> "A verdict is against the manifest weight of the evidence when an opposite conclusion is clearly apparent [citation], or the finding of the jury appears to be unreasonably arbitrary and not based on the evidence. [Citation.] If there is evidence which, if believed, would support the verdict, * * * a reviewing court should not interfere with the result."

One passively negligent may be indemnified where another's negligence is active in nature but *only* where he himself is not guilty of active negligence, as the active/passive doctrine does not permit the total shifting of responsibility between actively negligent parties despite a qualitative difference in the degree of their negligence. *Garfield Park Community Hospital v. Vitacco* (1975), 27 Ill. App. 3d 741, 327 N.E.2d 408.

> "Determination of this question is not a matter of proceeding according to the usual dictionary definitions of the words 'active' and 'passive'. These words are terms of art and they must be applied in accordance with concepts worked out by courts of review upon a case by case basis. Under appropriate circumstances, inaction or passivity in the ordinary sense may well constitute the primary cause of the mishap or active negligence [citation.] It has been appropriately stated that 'mere motion does not define the distinction between active and passive negligence.' [Citation.]" (*Moody v. Chicago Transit Authority* (1974), 17 Ill. App. 3d 113, 117, 307 N.E.2d 789, 792-93.)

In scaffolding cases, it has been recognized that the failure to discover a defect (*Miller v. DeWitt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630) or the failure to stop work in light of defective scaffolding (*Shell Oil Co. v. Hercules Construction Co.* (1966), 74 Ill. App. 2d 166, 219 N.E.2d 392) may, under certain circumstances, constitute only passive negligence.

■■ Here, Warren (Cunningham's supervisor) stated that it was his decision not to grout prior to the erection of the steel framework and,

although he denied that he determined the excessive elevation of the anchor bolts, the jury could have believed Leroy Smith, an employee of the masonry and concrete subcontractor, who testified that Warren had done so. Moreover, Warren testified that grouting and the elevation of the anchor bolts were not the responsibility of Mississippi and that, with the exception of the use of the crane, he had acquiesced in the measures which Mississippi chose to employ to compensate for the lack of grouting and the excessive elevation of the anchor bolts. As noted above, there was testimony that the use of the crane did not cause the failure of the southern column, and we are of the opinion that the jury could reasonably have found that the failure or inadequacy of one or more of the compensating measures caused the failure of the column and that Cunningham had actively participated in determining the measures utilized. Consequently, we cannot say that the verdict denying its indemnity was against the manifest weight of the evidence.

After oral argument in this court, Cunningham, relying upon the decision in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 373 N.E.2d 1326) filed a motion to reverse and remand this cause to enable it to amend its third-party complaint to seek contribution from Mississippi. We denied this motion, as the Illinois Supreme Court, on January 26, 1978, rendered a supplemental opinion in *Skinner,* giving it prospective application to causes of action arising from occurrences on and after March 1, 1978.

For the reasons stated, the judgment appealed from is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.