403 So.2d 1379 (1981)
Charles FORD, the City of South Bay, Florida and Appalachian Insurance Company, Appellants/Cross-Appellees,
v.
Albert ROBINSON and Carnell Robinson, Appellees/Cross-Appellants.
No. 80-1610.
District Court of Appeal of Florida, Fourth District.
September 30, 1981.
*1380 Roy R. Watson of Adams, Coogler, Watson & Smith, P.A., West Palm Beach, for appellants/cross-appellees.
Raymond G. Ingalsbe and David C. Wiitala of Ingalsbe, McManus & Wiitala, P.A., North Palm Beach, for appellees/cross-appellants.
ANSTEAD, Judge.
This is an appeal from an order granting a new trial to the appellees, Albert Robinson and Carnell Robinson, on the grounds that the jury verdict was contrary to the manifest weight of the evidence. We affirm.
The appellees brought a personal injury action against the appellants alleging that Charles Ford, while acting in the course of his employment as a police officer with the City of South Bay unlawfully assaulted and battered the appellee Albert Robinson. The appellant denied these allegations and alleged that Ford's actions in admittedly striking Mr. Robinson with a police nightstick were made necessary by Robinson's unlawfully resisting arrest.
At trial the appellees called numerous witnesses, including a police officer who was present with Ford when the incident in question took place. In essence this testimony established that Ford did strike Mr. Robinson and that Robinson had done nothing *1381 to justify Ford's actions. The only substantial evidence offered to contradict this testimony was presented by Ford himself who testified that he struck Robinson twice over the head with a nightstick after Robinson first pushed Ford away when Ford attempted to arrest him for refusing to leave the scene. The jury returned a verdict in favor of appellants.
The trial court ordered a new trial in a written order which included a detailed review of the evidence and concluded:
Taking into consideration the entire testimony in the case and the demeanor of the witnesses while testifying, the Court finds that the Jury could not have found for the Defendant unless it had been swayed by prejudice or sympathy. There was a total lack of believable evidence that the Plaintiff did anything whatsoever to deserve the beating he received. There was no evidence or inference of evidence that it was necessary for the police officer to administer such a beating in order to arrest the Plaintiff.
The Court is firmly and conscientiously convinced that a new trial is absolutley (sic) necessary in order to prevent a miscarriage of justice in this case. It is the Court's opinion that the Jury's Verdict here was against the manifest weight of the evidence. The Court is fully aware that it is exercising its broad discretion to the limit when it issues or orders a new trial on the grounds that the Verdict was against the manifest weight of the evidence. However, the Court believes in this case that the Jury Verdict was totally inconsistent with the logic and the reasonableness of the testimony that the Court heard at this trial.
In essence appellants contend that the issue of liability was for the jury and that since there was substantial competent evidence to support the verdict, the trial court was not authorized to set aside the verdict. In their brief appellants cite the trial court's denial of appellees' motion for directed verdict as illustrative of the trial court's own finding that the issue of liability should be resolved by the jury:
There is an inherent inconsistency between the court's order denying plaintiff's motion for directed verdict at the conclusion of all of the evidence in the case, and the court's order granting plaintiff's motion for new trial subsequent to verdict.
Although this assertion has strong appeal, it fails to accurately reflect the nature of the authority of the trial court to order a new trial on the grounds that a verdict is contrary to the manifest weight of the evidence. Ford Motor Company v. Kikis, 401 So.2d 1341 (Fla. 1981); Rivera v. White, 386 So.2d 1233 (Fla. 3d DCA 1980).
In Warner v. Goding, 91 Fla. 260, 107 So. 406 (Fla. 1926), overruled on other grounds, Lynch v. Walker, 159 Fla. 188, 31 So.2d 268 (Fla. 1947), the Florida Supreme Court discussed at length the historical origins of the power to order a new trial:
Early in the history of the common law the verdict of a jury was regarded as conclusive, and new trials were not granted. A party, injured by an unjust verdict, might seek his remedy by suit in equity, writ of attaint against the jury, or by writ of venire de novo. Owing to the failure to report decisions relating to motions, the exact time when the practice of granting new trials under the common law had its origin is uncertain; but in the first reported case, Wood v. Gunston, style 466, decided 1665, the practice of granting new trials was said to be frequent. Wood v. Gunston was a case in which a new trial was granted for partiality of the jury in awarding excessive damages for libel, wherein Glynn, C.J., made the following comment:
"It is in the discretion of the court in some cases to grant a new trial, and this must be a judicial and not an arbitrary discretion; and it is frequent in our books for the court to take notice of miscarriages of juries, and to grant new trials upon them. And it is for the people's benefit that it should be so, for a jury may sometimes, by indirect dealings, be moved to side with one party, and not to be indifferent betwixt them; but it cannot be so intended of the court."

*1382 Prior to the practice of granting new trials, the writ of attaint against the jury was the most common means of reversing an unwarranted verdict, and the hardships attending the writ of attaint seem to have led the courts first to modify verdicts and then to grant new trials. 14 Ency. Pl. & Pr. 717 and 718.
91 Fla. 264, 265, 107 So. 407, 408.
The power of the trial judge to order a new trial derives, in other words, from the equitable concept that neither a wronged litigant nor society itself can afford to be without some means to remedy a palpable miscarriage of justice. Unfortunately, the high moral appeal of this sentiment is directly proportional to the difficulty which the courts have encountered in attempting to express it as an objective standard. Originally, the Florida trial judge was simply directed to grant a new trial whenever the "substantial rights" of a party had "been so violated as to make it reasonably clear that a fair trial was not had," and there was "no limit to the number or character of the grounds" upon which an order for a new trial could be based. Warner v. Goding, supra, 91 Fla. 265, 107 So. 408. Through the years, however, this somewhat nebulous initial formulation has been refined by decisional law and two distinct grounds have emerged upon which a new trial might properly be ordered:
1) The trial judge becomes aware of some specific and substantial prejudicial error; or
2) The trial judge finds that the jury verdict is "contrary to the manifest weight of the evidence."
See Collins Fruit Company v. Giglio, 184 So.2d 447 (Fla. 2d DCA 1966); Cloud v. Fallis, 110 So.2d 669 (Fla. 1959).
The trial judge who must decide whether to grant a new trial on the proffered ground that some reversible error of law occurred at some point during the trial need only ask himself if there was error and if so whether the error was substantially prejudicial. In that instance, the judge is required to sit in essence as an appellate judge. If he concludes that reversible error has been committed, the judge is obliged to grant a new trial on the same basis that an appellate court would do so. The power of appellate review over the trial judge's resolution of such alleged errors is quite broad, the appellate court being on an "equal footing" with the trial court. Collins Fruit Company v. Giglio, supra, 184 So.2d 447; see also Gatlin v. Jacobs Construction Co., 218 So.2d 188 (Fla. 4th DCA 1969), cert. denied 225 So.2d 529 (Fla. 1969); Boutwell v. Bishop, 194 So.2d 3 (Fla. 1st DCA 1967).
However, the trial judge who must decide whether to grant a new trial on the proffered ground that the jury verdict was "contrary to the manifest weight of the evidence" faces a far more difficult task. The phrase itself is not easy to define.[1] In Cloud v. Fallis, supra, the Supreme Court gave the phrase its modern meaning when it resolved two conflicting lines in its prior decisional law by announcing a preference for the "broad discretion rule" over the "substantial competent evidence rule." Briefly stated, under the "broad discretion rule" a trial judge may grant a new trial "when the verdict is contrary to the `manifest weight and probative force of the evidence and (the) justice of the cause'" requires it. 110 So.2d 671. This rule affords the trial judge a much broader discretion than that afforded by the conflicting "substantial competent evidence rule," under *1383 which the judge was required to uphold any jury verdict supported by "substantial competent evidence and (in) the absence of any showing the jury had been deceived about the force and credibility of the evidence or influenced by outside considerations." Id.
Subsequent Florida decisional law has purported to fill in the contours of the "broad discretion rule" delineated in Cloud v. Fallis. "Because of his direct and superior vantage point," a trial judge must be afforded considerable "discretionary power to grant or deny a motion for new trial," Baptist Memorial Hospital, Inc. v. Bell, 384 So.2d 145, 146 (Fla. 1980). But this discretion is not unbridled: "The province of the jury ought not to be invaded by a judge because he raises a judicial eyebrow at its verdict," and a trial judge does not sit on every jury as a "seventh juror" with a veto power. Wackenhut Corporation v. Canty, 359 So.2d 430, 437 (Fla. 1978). A new trial should only be granted "if the error complained of has resulted in a miscarriage of justice." City of Hollywood v. Jarkesy, 343 So.2d 886, 888 (Fla. 4th DCA 1977). "The basic test to be applied in determining the adequacy of a verdict is whether a jury of reasonable men could have returned the verdict. Specifically, in order to validly set aside a verdict ... it must be shown that the verdict was induced by prejudice or passion, some misconception of ... the evidence, or it must be shown that the jury did not consider all of the elements ... involved, missed a consideration of the issues submitted or failed to discharge their duty as given them by the court's charge." Id. These cases are only a sampling of the attempts made by the appellate courts to provide trial judges with concrete guidance in resolving this issue. Nonetheless, we have been forced to concede in the past that "it is not at all clear when a trial judge can be held in error for granting a new trial." Weems v. Dawson, 352 So.2d 1196, 1198 (Fla. 4th DCA 1977), cert. denied 359 So.2d 1221 (Fla. 1978).
It appears that the grant of authority to a trial judge to order a new trial when he concludes that a verdict is contrary to the manifest weight of the evidence, simply constitutes a judicial policy decision that some check on the jury's authority is necessary in cases where the evidence is not so one-sided as to merit a directed verdict, but yet is sufficiently one-sided to make it appear that a finding contrary to that evidence would constitute a miscarriage of justice, although there may not be identifiable error in the record to explain the jury's verdict. The test to be applied by a trial judge is admittedly to some degree subjective. Judges may differ in their views of "manifest weight of the evidence" in a given case. However, because the trial judge is on the spot and has some ability to measure not only the tangible evidence but also the intangible, such as the credibility of witnesses, his decision is given great deference. The only real counter-check on the abuse of a trial court's discretion is the existence of the corollary rule that the authority be exercised only in those rare instances where it is clear that the jury has gone astray. The trial judge is not to sit as a "seventh juror." But that rule is really nothing more than an admonition that relies for compliance heavily on the subjective good faith of the trial judge. Another check is the requirement that the trial court articulate in writing, as the trial judge did here, the specific reasons that a verdict has been found deficient. See Rule of Civil Procedure 1.530(f). Otherwise, a trial judge's exercise of this authority is not to be disturbed "if reasonable men could differ as to the propriety of the action taken by the trial court."[2] This is broad discretion indeed, but there is little indication that Florida trial judges have abused this grant of authority and there is no perceptible move afoot to take this authority away.[3]
In this case, having reviewed the evidence and the trial court's order granting *1384 a new trial, we are unable to conclude that the trial court erred in its conclusion that the verdict was contrary to the manifest weight of the evidence. We have also considered the issues raised in the cross-appeal as to alleged errors in the admission of evidence, and we find no error by the trial court in those rulings on the present state of the record.
Accordingly, the order of the trial court is affirmed.
HERSEY and GLICKSTEIN, JJ., concur.
NOTES
[1] Some suggested definitions include:

"Manifest means clearly evident, clear, plain and undisputable." Erlacher v. Leonard Brothers Transfers, 106 So.2d 201, 203 (Fla. 2d DCA 1958), citing Schneiderman v. Interstate Transit Lines, Inc., 331 Ill. App. 143, 72 N.E.2d 705 (1947), affirmed 401 Ill. 172, 81 N.E.2d 361 (1949).
"`Weight of the evidence' is the `balance or preponderance of evidence.'" Tibbs v. State, 397 So.2d 1120, 1123 (Fla. 1981) quoting Black's Law Dictionary 1429 (5th Ed. 1979). "The manifest weight of the evidence is that which is `the clearly evident, plain and undisputable weight of the evidence.'" Goodrick v. Bassick Company, 58 Ill. App.3d 447, 16 Ill.Dec. 384, 374 N.E.2d 1262, 1267 (1978), quoting in part Spankroy v. Alesky, 45 Ill. App.3d 432, 4 Ill.Dec. 126, 359 N.E.2d 1078, 1080 (1977).
[2] Ford Motor Company v. Kikis, supra.
[3] In Tibbs v. State, supra, footnote 1, the Florida Supreme Court held that appellate courts may not order new trials in criminal cases where the evidence is technically sufficient but its weight is tenuous or insubstantial.