GARY HOLMES, Plaintiff-Appellee, v. SAHARA COAL COMPANY, Defendant-Appellant and Third-Party Plaintiff and Counterdefendant-Appellee (Caterpillar Tractor Company, Third-Party Defendant and Counterplaintiff-Appellant).

Fifth District   No. 5—83—0809

Opinion filed March 13, 1985.—Rehearing denied April 11, 1985.

KASSERMAN, J., dissenting.

William Kent Brandon, of Mitchell, Brandon & Schmidt, of Carbondale, for appellant Caterpillar Tractor Company.

Harris, Lambert & Wilson, of Marion, for appellee Gary Holmes.

Lord, Bissell & Brook, of Chicago, and Jelliffe, Ferrell & Morris, of Harrisburg (Hugh C. Griffin and Donald V. Ferrell, of counsel), for Sahara Coal Company.

JUSTICE HARRISON delivered the opinion of the court:

Sahara Coal Company (Sahara) and Caterpillar Tractor Company (Caterpillar) appeal a judgment entered in the circuit court of Williamson County. The action was brought by Gary Holmes (plaintiff) to recover for personal injuries. Plaintiff's action against Sahara was predicated on a theory of negligence. Plaintiff's action against Caterpillar was predicated on a theory of strict liability. Sahara filed a counterclaim for indemnity against Caterpillar, and Caterpillar filed an action for contribution against Sahara. Following a jury trial, judgment was entered in favor of plaintiff against Sahara in the amount of $183,000. Judgment was entered in favor of plaintiff against Caterpillar in the amount of $200,000. The jury returned a verdict in favor of Caterpillar on Sahara's action for indemnity. Sahara was found liable in contribution to Caterpillar, and judgment was entered in the amount of $120,000.

Plaintiff was employed as a field mechanic by Fabick Machinery Company. On November 20, 1978, plaintiff was sent to repair a Caterpillar model 637D tractor-scraper, owned by Sahara. After arriving at Sahara's mining site, plaintiff proceeded to the working area. Plaintiff was accompanied by Sahara employee Denzel Butler. The tractor-scraper in need of repair was operated by Deon Wallace. Upon being approached by plaintiff and Mr. Butler, Mr. Wallace turned off the machine and left the operator's compartment. Plaintiff proceeded to work on the tractor-scraper. After approximately 15 to 20 minutes, plaintiff requested that Mr. Wallace start the engine. As Mr. Wallace started the engine, a piece of metal (the bail) located at the front of the tractor-scraper rose and pinched plaintiff's leg against the bail cylinder.

The testimony at trial established that the bail is controlled by a lever which operates in three positions. When the engine is started with the lever in two of these positions (the "cushion ride-bail up" and "lock down-bail up" positions), the bail rises automatically. When the engine is started with the lever in the remaining position (the "lock down-bail down" position), the bail remains down. A decal above the bail lever warned that the lever should be placed in the "lock down-bail down" position when the machine was parked or be-

ing serviced, and that injury to persons working under the bail cylinder could result if the engine were started with the lever in the "bail up" position. Additional warnings and instructions were printed in the operator's manual. A decal in the operator's compartment directed the operator to read the manual and to lower all raised equipment before starting the engine.

Deon Wallace testified that he could not recall reading the warning decal near the bail lever prior to the accident, and that he had never read the operator's manual. Mr. Wallace knew, however, that the bail would rise automatically if the engine were started with the bail lever in any but the "lock down-bail down" position. Mr. Wallace testified that before starting the engine, he asked plaintiff "if all was clear," and that he thought plaintiff answered affirmatively.

Plaintiff testified that he was familiar with the model 637D tractor-scraper and knew that the bail lever would rise if the engine were started with the bail lever in the "bail up" or "cushion ride" positions. He stated that Deon Wallace said nothing before starting the engine at plaintiff's request, and that it had not been necessary to position his (plaintiff's) leg between the bail and bail cylinder in order to repair the machine.

Thomas Hrodey, a design engineer employed by Caterpillar, testified that an alternative design of the tractor-scraper would have prevented plaintiff's injury. The installation of a heavier spring in the bail operating mechanism, according to Mr. Hrodey, would have prevented the bail mechanism from rising. Mr. Hrodey estimated the cost of the spring at $25.

Caterpillar alleges that the trial court erred in denying Caterpillar's motion for judgment notwithstanding the verdict. Caterpillar argues that the evidence established that the model 637D tractor-scraper was, as a matter of law, neither defective nor unreasonably dangerous in light of Caterpillar's warnings to the operator of the machine. The fact that a manufacturer supplies warning, however, does not mean that the warning is adequate to shift or reduce the risk inherent in a dangerous product. (*Palmer v. Avco Distributing Corp.* (1980), 82 Ill. 2d 211, 221-22, 412 N.E.2d 959.) This determination is generally a question of fact for the jury. (82 Ill. 2d 211, 221.) A warning may be found inadequate, for example, if it does not specify the risk presented by the product, if its size or print is too small or inappropriately placed, or if it is unlikely to reach foreseeable users of the product. (82 Ill. 2d 211, 221-22.) In the instant case, the jury reasonably could have inferred that the decals in the operating compartment did not accurately specify the danger of starting the engine with the

bail level in the "cushion ride-bail up" position, that the decals were of insufficient size, or even that the decals were inappropriately placed. The jury could also have inferred that the warnings in the operator's manual were inadequate to warn foreseeable users such as Deon Wallace. Judgment notwithstanding the verdict should be entered only where all the evidence viewed in the aspect most favorable to the opponent so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) The evidence did not so overwhelmingly favor the movant in the instant case.

■ Caterpillar alleges that the trial court erred in refusing Caterpillar's jury instruction No. 5 (as originally tendered) and in allowing Sahara's instruction No. 10. Caterpillar's original instruction No. 5 concerned the use of verdict forms with reference both to Caterpillar's claim for contribution against Sahara and to Sahara's claim for indemnity against Caterpillar. The court gave that portion of instruction No. 5 pertaining to Caterpillar's claim for contribution. In place of that portion of instruction No. 5 pertaining to Sahara's claim for indemnity, the court substituted Sahara's instruction No. 10. Sahara's instruction No. 10 (Illinois Pattern Jury Instructions, Civil, No. 500.24 (Supp. 1977)) contained the same language as that portion of Caterpillar's instruction No. 5 which the court refused. Caterpillar nevertheless argues that the separation of the instructions regarding contribution and indemnity served to confuse the jury. We find no support in the record for this assertion.

Caterpillar alleges that the court erred in admitting testimony of an accident occurring in 1974 as a result of a person's contact with a similar model tractor-scraper. Following Caterpillar's cross-examination of Fabick mechanic Bill Ollis, during which Ollis stated that he was unaware of any accidents similar to the one involving plaintiff, plaintiff's counsel was permitted to read into evidence a portion of the discovery deposition of Thomas Hrodey. The following questions and answers were read:

"Q: Do you know the reasons for the warnings contained in the decals to be placed on the machine identified as Exhibit 2 about which you have testified, what the reason for those warnings was?

A: There was another incident on a 657 size vehicle — it happened prior to this accident — of a mechanic getting pinched under the bail cylinder.

Q: What circumstances occurred? Was the bail in a down po-

sition and the engine started? A similar set of facts?

A: Yes.

Q: Or what? Do you know how long that event to which you just alluded took place prior to the — let's say prior to 1977 when this machine was manufactured?

A: I believe somewhere in 1974.

Q: How did you learn of that, what I am going to call the 1974 incident?

A: We heard of an incident report of a man getting pinched. Now we realized the mechanics could possibly be up there around the bail and they started the engine and he got pinched in there."

■■ ■ Evidence of prior similar occurrences is admissible for the purpose of demonstrating that a manufacturer possessed knowledge of a defect in a particular product prior to the accident in the litigated case. (*Moore v. Remington Arms Co.* (1981), 100 Ill. App. 3d 1102, 1110-11, 427 N.E.2d 608.) The issue of Caterpillar's knowledge of the product's dangerous propensity was properly before the court, since Caterpillar's strict liability in tort rested upon its alleged failure to provide adequate warning of the danger. A manufacturer's knowledge of a product's dangerous condition must be established in order to impose strict liability for failure to warn. *Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 33, 402 N.E.2d 194.

■■ ■ Caterpillar argues that the 1974 accident is "totally dissimilar" to that in the instant case because the prior accident involved a model 657 tractor-scraper and not, as in plaintiff's accident, a model 637D. The question of whether a prior occurrence is sufficiently similar to the subsequent occurrence is generally a determination within the sound discretion of the trial court. (*Johnson v. Amerco, Inc.* (1980), 87 Ill. App. 3d 827, 846, 409 N.E.2d 299.) It is not necessary that the facts and circumstances surrounding the accidents be identical; substantial similarity is all that is required. (*Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 440-41, 396 N.E.2d 534.) Plaintiff's accident in the instant case bore substantial similarity to the 1974 accident which was the subject of Mr. Hrodey's deposition. The alleged dissimilarity of the equipment is undermined by Mr. Hrodey's admission that the accident involving a model 657 tractor-scraper prompted Caterpillar to place warnings in the cab and operator's manual of the model 637D.

■ Both Sahara and Caterpillar allege that the trial court erred in certain rulings regarding the admissibility of evidence demonstrating Caterpillar's post-occurrence adoption of a design modification.

Before trial, Caterpillar stipulated to the feasibility of an alternate design of the tractor-scraper which would have prevented plaintiff's injury. Caterpillar then offered a motion *in limine* precluding the introduction of evidence regarding modification of the tractor-scraper subsequent to plaintiff's injury. Sahara contends that the court erred in granting Caterpillar's motion *in limine*. Caterpillar contends that the court erred in admitting plaintiff's exhibit No. 32 (a Caterpillar service letter regarding proposed modifications of the bail selector valve and control valve) together with certain cross-examination testimony of Thomas Hrodey regarding such modifications, thus violating the court's own *in limine* order.

Although evidence of post-occurrence modification of an allegedly defective product is not admissible in an action predicated on negligence, such evidence is admissible where, as in the instant case, the action is predicated on a theory of strict liability. (*Burke v. Illinois Power Co.* (1978), 57 Ill. App. 3d 498, 514, 373 N.E.2d 1354.) Plaintiff's exhibit No. 32 and Thomas Hrodey's cross-examination testimony were, then, properly admitted for the purpose of demonstrating that Caterpillar's original design was defective, notwithstanding Caterpillar's stipulation regarding the feasibility of an alternate design. Caterpillar's stipulation that it was feasible to design a tractor-scraper upon which plaintiff would not have been injured cannot reasonably be characterized as a concession that Caterpillar's actual design resulted in a defective product; rather, Caterpillar's stipulation conceded but one element of a necessarily complex determination. Nevertheless, we cannot view the court's order *in limine* as reversible error, since the only evidence of the product's post-occurrence modification which was offered at trial was admitted despite the erroneous *in limine* order.

■■ ■ Sahara alleges that the trial court erred in directing the jury to find that Deon Wallace was not the "loaned servant" of Fabick. The loaned-servant doctrine is a maxim of agency law which recognizes that the agent or employee of one principal may in fact become the employee of a second principal when the employee is loaned to the second principal for some special purpose. (*Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 351, 459 N.E.2d 935.) The essential criterion for determining the existence of a loaned-servant relationship is that of control over the employee. (*Kristensen v. Gerhardt F. Meyne Co.* (1982), 104 Ill. App. 3d 1075, 1079, 433 N.E.2d 1050.) The determination of control will depend upon such factors as the context in which the employee was hired, the manner in which the employee is paid, the procedure according to which the em-

ployee may be discharged, and the way in which the employee's work is directed or supervised. *Bituminous Casualty Corp. v. Wilson* (1983), 119 Ill. App. 3d 454, 460, 456 N.E.2d 696.

The allegation of a loaned-servant relationship usually will present a question of fact for the jury. (119 Ill. App. 3d 454, 460.) In the instant case, however, there was no evidence that Mr. Wallace was hired in a context suggesting control by Fabick. Neither was there evidence suggesting that Fabick was responsible for paying Mr. Wallace, nor that Fabick possessed authority to discharge him. These essential elements of control, then, were not established by the testimony at trial. Mr. Wallace's act of starting the machine at plaintiff's behest was not, in itself, sufficient to establish Fabick's control over Mr. Wallace. The mere fact that an employee in the course of a special service responds to directions or signals given by a purported second principal does not make the employee a loaned servant. (*Richard v. Illinois Bell Telephone Co.* (1978), 66 Ill. App. 3d 825, 832, 383 N.E.2d 1242.) In the instant case, the evidence did not demonstrate the requisites of a loaned-servant relationship, and the facts were not subject to inferences which would allow a reasoned finding of such a relationship. The trial court did not abuse its discretion by directing a verdict for plaintiff on this issue.

Sahara alleges that the jury's finding that only 8.5% negligence should be allocated to plaintiff was against the manifest weight of the evidence presented at trial. A verdict is against "the manifest weight of the evidence" only when an opposite conclusion is clearly apparent or when the finding of the jury appears arbitrary and unsubstantiated by the evidence. (*Goodrick v. Bassick Co.* (1978), 58 Ill. App. 3d 447, 454, 374 N.E.2d 1262.) A reviewing court will not overturn a jury's verdict unless, considering all evidence in the light most favorable to the party who prevailed at trial, the jury's conclusion is palpably erroneous and wholly unwarranted. (*Lynch v. Board of Education* (1979), 72 Ill. App. 3d 317, 326, 390 J.E.2d 526, *aff'd* (1980), 82 Ill. 2d 415, 412 N.E.2d 447.) In the instant case, substantial evidence was presented in support of plaintiff's allegations that Deon Wallace was negligent in his operation of the tractor-scraper, and that the tractor-scraper itself was an unreasonably dangerous product. The precise allocation of the parties' fault in light of all the evidence was a matter upon which reasonable persons could disagree. Upon reviewing the record, we cannot characterize the jury's finding as arbitrary or palpably erroneous.

Sahara alleges that the jury's answer to special interrogatory No. 2 entitled Sahara to judgment against Caterpillar both on Sahara's

claim for indemnity and on Caterpillar's claim for contribution. The question asked of the jury was the following:

> "Question No. 2: Was the 637D tractor-scraper machine defective and unreasonably dangerous at the time it left the control of Caterpillar, which defective and unreasonably dangerous condition was a proximate cause of the injuries and damages sustained by Gary Holmes?"

The jury answered the question in the affirmative. The jury had been instructed that if it should find that the tractor-scraper was in an unreasonably dangerous or defective condition at the time it left Caterpillar's control, a verdict should then be entered in favor of Sahara on Sahara's action for indemnity. Caterpillar argues that Sahara failed to state a cause of action, since the concept of implied indemnity has been superseded by the General Assembly's adoption of the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1981, ch. 70, par. 301 et seq.) and, in any event, Caterpillar is entitled to judgment as a matter of law since Sahara neither alleged nor proved the necessary pre-tort relationship between Sahara and Caterpillar.

■■■ The question of whether the General Assembly intended the Contribution Among Joint Tortfeasors Act to replace rather than supplement the common law concept of implied indemnity has generated considerable discussion. (*E.g.*, Anich, *Implied Indemnity After Skinner & the Illinois Contribution Act: The Case for a Uniform Standard*, 14 Loy. U. Chi. L. J. 531 (1983); Appel & Michael, *Contribution Among Joint Tortfeasors in Illinois: An Opportunity for Legislative & Judicial Cooperation*, 10 Loy. U. Chi. L. J. 169, 192-93 (1979); Ferrini, *The Evolution from Indemnity to Contribution — A Question of the Future, If Any, of Indemnity*, 59 Chi. Bar. Rec. 254 (1978).) While acknowledging the debate, the Illinois Supreme Court thus far has declined to resolve the issue. (*Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 350-51, 459 N.E.2d 935; *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 453-54.) The appellate court, in a thorough and well-reasoned disposition, recently held that the Contribution Act has in fact extinguished actions based on implied indemnity, with two "possibl[e]" exceptions. (*Morizzo v. Laverdure* (1984), 127 Ill. App. 3d 767, 774, 469 N.E.2d 653.) The possible exceptions noted by the court were cases involving either some pre-tort relationship whereby one party becomes vicariously liable for another (*e.g,* employer-employee, owner-lessee, master-servant), or, an "upstream" claim of strict liability for an unreasonably dangerous or defective product. (127 Ill. App. 3d 767, 774.) One justice of the *Morizzo* court reasoned that these proposed exceptions are unfounded. (127 Ill. App.

3d 767, 775 (Downing, J., specially concurring).) "[W]ith the passage of the Contribution Act," Justice Downing stated, "it is reasonable to conclude that the legislature intended that, without qualification, implied indemnity should no longer exist. I see no reason to distinguish between vicarious liability, indemnity in tort cases, or cases alleging 'upstream' strict liability." (127 Ill. App. 3d 767, 775.) We agree.

The right of contribution provides a mechanism whereby each defendant in a tort action may bear the loss according to his responsibility for the tortious act. This apportionment of the burden complements the principles of comparative negligence and comparative fault enunciated by our supreme court. In indemnity, the measure of recovery is all or nothing. (*Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 459 N.E.2d 935.) Allowing one tortfeasor (the indemnitee) to shift the entire loss to another (the indemnitor) imposes upon the indemnitor a burden necessarily disproportionate to the indemnitor's responsibility for the injury. Such an imposition in the so-called exceptional cases creates a scheme according to which a tortfeasor's culpability bears no direct relation to his burden of loss in cases involving vicarious liability or strict "upstream" liability, while necessarily determining the tortfeasor's burden in all other cases. The effect of this scheme is to nullify the equitable equation of the degree of responsibility for the tortious act and the burden of loss for the harm thereby inflicted, thus undermining the basis upon which the right of contribution, as well as the principles of comparative negligence and comparative fault, rest. We cannot, in light of such legislative history as we possess, attribute to the General Assembly an intention in enacting the Contribution Act inconsistent with what would appear to be the principles furthered by the Act. It is our judgment that the Contribution Act has extinguished all actions for implied indemnity, and that Sahara's complaint thus failed to state a cause of action.

■ Finally, Sahara alleges that the contribution judgment in favor of Caterpillar should be reduced by 8.5% to account for plaintiff's comparative negligence. This allegation fails to realize that plaintiff's action against Sahara was predicated on a theory of negligence, that plaintiff's action against Caterpillar was predicated on a theory of strict liability, and that the jury's attribution of 8.5% negligence to plaintiff affects neither Caterpillar's liability to plaintiff nor Sahara's liability to Caterpillar. The jury specifically found that plaintiff was guilty of negligence with regard to count I of plaintiff's complaint, *i.e.*, plaintiff's action against Sahara. The jury specifically found that plaintiff did not assume the risk of the defective and unreasonably dangerous condition of the tractor-scraper alleged in count II of plain-

tiff's complaint, *i.e.*, plaintiff's action against Caterpillar. The jury made the following finding with regard to Caterpillar's contribution action against Sahara.

"We, the jury, found that Caterpillar is entitled to contribution from Sahara and further find the following:

Assuming that 100% represents the total combined fault of Sahara and Caterpillar on the claim for contribution, we find the percentage of fault attributable to Sahara is 60% percent, for which Caterpillar should receive contribution."

The trial court correctly entered judgment against Sahara in the amount of $120,000, reflecting 60% of Caterpillar's obligation to plaintiff. It was the judgment regarding Caterpillar's liability to plaintiff, unaffected by plaintiff's negligence, upon which Caterpillar sought contribution from Sahara.

The judgment of the trial court is affirmed.

Affirmed.

WELCH, J., concurs.

KASSERMAN, J., dissenting:

I am unable to conclude, as does the majority, that the Illinois Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1981, ch. 70, par. 301 *et seq.*) extinguishes all actions of implied indemnity; therefore, I respectfully dissent.

In adopting the special concurring opinion of Justice Downing in *Morizzo v. Laverdure* (1984), 127 Ill. App. 3d 767, 469 N.E.2d 653, the majority in the case at bar overrules the majority of the court in *Morizzo* in its decision that certain causes of action for implied indemnity are not extinguished by the Contribution Act. The court in *Morizzo* did, in fact, determine that implied ijdemnity is still viable in Illinois with respect to cases involving some pre-tort relationship between parties which gives rise to a duty to indemnify, such as those involving vicarious liability (lessor-lessee; employer-employee; owner and lessee; master and servant) and "upstream" claims in a strict liability action.

In the case at bar, Sahara's counterclaim against Caterpillar is an "upstream" claim in a strict liability action and, consequently, is embraced within one of the specified instances in which the *Morizzo* court found that implied indemnity still exists. Such a claim falls squarely within the ambit of the rule announced in *Lowe v. Norfolk &*

678

*Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 97, 463 N.E.2d 792, 805, in which this court stated that the Illinois Contribution Act does not prohibit an action for "upstream" indemnity in products liability cases.

Applying the above rationale to the instant appeal, it is my conclusion that Sahara's counterclaim stated a cause of action against Caterpillar for implied indemnity. Furthermore, the jury in its answer to special interrogatory No. 2 found that Caterpillar placed a defective and unreasonably dangerous product in the stream of commerce and that such defective and dangerous condition was the proximate cause of the injuries sustained by plaintiff. Therefore, Sahara would have been entitled to a judgment on its counterclaim against Caterpillar for indemnity; and although "downstream" indemnity has generally been prohibited, Caterpillar should be permitted to seek contribution from Sahara to establish that it is entitled to contribution on the basis that Sahara misused or assumed the risk of the defective product. *Cf. Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 97, 463 N.E.2d 792, 805.

For the foregoing reasons, I would reverse the decision of the trial court and remand this cause for a new trial consistent with this dissent.