LAWRENCE M. HACKETT, Plaintiff-Appellant, *v.* ROGER D. ASHLEY, Defendant-Appellee.

Third District   No. 78-395

Opinion filed May 3, 1979.

Samuel J. Naylor, of Carthage, for appellant.

Albert V. Ancelet, of Capps, Cosgrove & Ancelet, of Carthage, for appellee.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

This action was commenced by plaintiff, Lawrence M. Hackett, a licensed Illinois real estate broker from Carthage, Illinois. He sought to recover damages for the alleged failure of defendant, Roger D. Ashley, to pay plaintiff's brokerage fee. A Hancock County jury rendered a verdict for the defendant upon which the trial court entered the judgment from which this appeal is taken. The trial court also denied plaintiff's post-trial motion and this appeal is taken from that order.

Defendant and his wife, Linda, lived in Carthage, Illinois, from January 1973 to April 1976, when defendant was plant food manager of the Hancock Service Company. In October 1975, they purchased, under

contract on an installment basis, a 197-acre farm just west of Carthage from Mr. and Mrs. Ralph Adams. The contract price was $275,800 payable as follows: $3,000 down; $69,950 on March 1, 1976, and 20 annual installments thereafter of $10,342.50, the unpaid principal bearing interest at 7 percent per annum beginning March 1, 1976, and the buyers had the right to sell part of the land and also to assign the contract.

After the defendant and his wife purchased the above-mentioned land on contract, they made efforts to sell a part of it as was their intention at the time of purchase. There were approximately 157 tillable acres west of the house on the subject property, and the Ashleys immediately began attempts to sell those 157 acres while planning to retain the remainder. In fact, immediately after the contract was signed in October 1975, the tillable land was listed with J. Yongmeyer, a real estate broker, through Dutch Myers, his salesman, for a period of two weeks. Neither Yongmeyer nor Myers found a buyer.

Another attempt was made to sell the tillable acres through the offices of Howard Perry. Mr. Perry, an officer of the Marine Trust Bank in Carthage, Illinois, managed land of Mr. Blumberg, a gentleman from the Chicago area. Perry put the defendant in touch with Blumberg, who declined to purchase any of defendant's land unless he could purchase the entire farm. Two months later, in January of 1976, the defendant learned he was to be transferred from the Carthage area and consequently determined to sell the entire farm. Defendant revised his offer to Blumberg, but by this time Blumberg was not interested in purchasing the entire farm.

At approximately the same time, in January of 1976, the defendant listed the farm with Junius Ufkes, a local real estate broker. Such listing was with the understanding that no sale was to be made by Ufkes until Blumberg decided to buy or not to buy. Subsequently Ufkes, acting with an Iowa broker, produced Paul H. Boulton and Dorothy L. Boulton as prospective purchasers. The defendant testified that he became aware of the Boultons' interest in the subject property on January 12, 1976. On January 22, 1976, an agreement to assign defendant's interest in the Ashley-Adams contract to the Boultons was executed. By reason of that assignment the Boultons agreed to pay defendant and his wife $31,000 and also agreed to assume the contract. Defendant paid Ufkes a commission of $9,314 based on 5 percent on the first $10,000 and 3 percent on the balance.

It is not the assignment to the Boultons which gives rise to this lawsuit, but rather several contemporaneous discussions concerning the sale of the same real estate which took place between plaintiff and defendant. One such discussion took place on January 12, 1976. On that date plaintiff telephoned the defendant. This fact is generally agreed, but

there is a dispute as to the substance of the conversation. Plaintiff alleges in his testimony that defendant authorized the plaintiff to sell the 197-acre farm for $315,000 in return for a commission of 6 percent. Defendant recollects that in that conversation plaintiff asked for listing of the 197-acre farm, and defendant said that he couldn't list the farm with plaintiff because he had two other people interested and would not sell the farm until he heard from them.

Two days later, on January 14, 1976, the plaintiff and the defendant met with two prospective buyers, Ralph and Jean Leerhoff, whom the plaintiff had located. Also present at the meeting was Mike Kelly, a long-time friend of the Leerhoffs and the plaintiff. Like the earlier conversation, the substance of what was said at this meeting is disputed. On the one hand the plaintiff, the Leerhoffs, and Mr. Kelly all testified that the defendant said he would sell the farm to the Leerhoffs, but that he wanted to talk with a then-unnamed advisor. Further, they all testified that defendant did not say that he had two other persons ahead of the Leerhoffs who were interested in the farm as buyers. On the other hand, defendant denied stating that he would sell the farm to the Leerhoffs; he also testified that he told the Leerhoffs that he had two other people who were interested in the farm and he would not commit himself to sell to the Leerhoffs until he had heard from those two persons. It was later revealed that the unnamed advisor was Howard Perry, the same person who had attempted to find a buyer in November of 1975.

A third conversation took place between plaintiff and defendant on January 19, 1976. On that date plaintiff telephoned the defendant to determine the status of the farm sale. According to the plaintiff, defendant replied that the only obstacle to the sale was plaintiff's commission. Defendant allegedly told the plaintiff that the commission was too high and he wanted more time to consider same before finalizing the sale. In defendant's version of the same phone conversation, he denied any discussion about plaintiff's commission. He offers instead that the only thing discussed was whether defendant had made up his mind regarding the sale to the Leerhoffs. Finally, in a phone conversation which took place on January 28 or 29, 1976, the defendant informed the plaintiff that he had sold the farm. It is plaintiff's theory that he produced a buyer who was ready, willing and able to purchase the farm on defendant's terms, and therefore plaintiff is entitled to the agreed commission. Defendant argues that he never agreed to pay plaintiff's commission, and that he consistently conditioned his conversations with the plaintiff on the decisions of two other prospective buyers. This lawsuit wherein the plaintiff, Lawrence M. Hackett, sought to recover a brokerage fee from the defendant, Roger D. Ashley, was the culmination of these two very different versions of events.

At the trial of this cause, Mr. Ralph Leerhoff was called as a witness for the plaintiff. During cross-examination by defendant's counsel, the following exchange took place:

"Defendant's Counsel: Do you recall my asking you if Mr. Ashley had made that statement?

Plaintiff's Counsel: Your Honor, I want to object to this at this time unless counsel will assure the court that he will connect this up.

Defendant's Counsel: I will.

The Court: All right, on the assurance that I will [*sic*] allow it in.

Defendant's Counsel: Do you recall me asking you whether Mr. Ashley had told you during this meeting that there were other people interested and he wouldn't sell the farm to you at that time?

Mr. Leerhoff: No, sir.

Defendant's Counsel: You don't recall me asking you that?

Mr. Leerhoff: No, sir."

The connecting testimony which was promised in this exchange was never offered into evidence. Plaintiff argues in his brief that where a foundation for impeachment has been laid, there is an obligation in law to produce an impeaching witness. Further, he argues that failure to meet such an obligation resulting in improper influence on the jury entitles the offended party to a new trial. We disagree.

There is substantial authority for the proposition cited by the plaintiff. (*Danzico v. Kelly* (1969), 112 Ill. App. 2d 14, 250 N.E.2d 801; *Ramseyer v. Illinois Central R.R. Co.* (1969), 110 Ill. App. 2d 95, 249 N.E.2d 120; *Gordon v. Checker Taxi Co.* (1948), 334 Ill. App. 313, 79 N.E.2d 632.) However, the particular facts of this case take it outside the general rule. Later in the trial defendant's counsel realized that in order for him to complete the impeachment it would be necessary for him to withdraw as attorney in the case and take the witness stand. Defendant's counsel cited the *Danzico* case to the court. After allowing plaintiff's counsel time to review the authorities, the following exchange took place:

"The Court: What do you wish to do?

Plaintiff's Counsel: I am willing for counsel to, on his motion, have that portion of the cross-examination stricken and the court so—the court instruct the jury to disregard it. My client does not want any mistrial or re-trial of this case and I think it is important though that the instruction of the Court to the jury be rather specific so that they understand what is actually being stricken.

The Court: All right, why don't you and [defendant's] counsel dictate what you want me to give and we will have it typed up and I will read it to them. That way there won't be any misunderstanding as to how specific it should be."

The instruction referred to in the quoted exchange was written and delivered to the jury. That instruction ordered the incomplete impeachment stricken from the record and disregarded by the jury.

■■ We believe the election by plaintiff's counsel to cure the error arising by reason of the incomplete impeachment waives any right to a mistrial or new trial which may have existed. As authority for that position, we quote from Justice Culbertson in the case of *Gaffner v. Meier* (1948), 336 Ill. App. 44, 47-48, 82 N.E.2d 818:

"* * * The court below gave the plaintiff, acting through her counsel, all the relief she requested. If the attorney for plaintiffs had requested a mistrial and that a juror be withdrawn and the cause continued, the court below would have been justified in granting such motion. Under the circumstances, however, since plaintiffs were willing to permit the cause to proceed on the basis of having the court rule the question as improper, and upon the basis of having the jury instructed to disregard it, plaintiffs cannot now complain and request a reversal upon the ground that such matters had come to the attention of the jury. If the party in a cause believes that something has occurred in the trial which is prejudicial, he should immediately call it to the attention of the court and move for a case of *Morrow v. United States,* 101 F.(2d) 654, at page 658 (certiorari denied 307 U.S. 628, 83 L. Ed. 1511, 59 Sup. Ct. 836), 'to grant the motion would in effect permit the plaintiff to gamble on the effect of defendant counsel's conduct on the jury. * * * If he believes that a prejudice exists, due to an improper question or remark, which will prevent a fair trial, the party who is prejudiced should ask for a new trial then and there. It is neither fair nor just that he first take a chance on a favorable verdict and, if disappointed, then complain.' The same principle of law has been followed by the reviewing courts of this State in many decisions (*Forest Preserve Dist. of Cook County v. Chicago Title & Trust Co.,* 351 Ill. 48, 56; *City of Chicago v. Leseth,* 142 Ill. 642, 643). It is obvious, therefore, that plaintiffs could not at this time request any more relief than was requested during the course of the trial, and since plaintiffs obtained all the relief which was requested of the trial court, there was no omission or denial which could become the basis of a reversal on such grounds at this time."

The facts in the case at bar are sufficiently similar to *Gaffner* that we believe the holding in *Gaffner* is controlling. In the instant case, not only did plaintiff's counsel fail to request a mistrial, he further expressly

disclaimed all rights to mistrial or retrial of the cause. As the court said in *Gaffner*, "it is neither fair nor just that he first take a chance on a favorable verdict and, if disappointed, then complain." The cases cited by plaintiff in his brief are not controlling. They differ factually in that none of those cases involve an election to waive a right to mistrial.

Plaintiff also objects that the following instruction was refused by the trial court:

"By calling Defendant for examination under Section 60 Of the Civil Practice Act, Plaintiff is not bound by the testimony given by the Defendant during such examination."

We agree with the trial court and hold that the plaintiff's tendered instruction was properly refused. We would first observe that plaintiff's instruction is not a correct statement of the law. The Illinois Supreme Court has stated that a party is "not bound to vouch for the veracity of the testimony of * * * adverse witnesses * * * [h]owever, they are bound by testimony of any adverse witness which stood uncontradicted and unrebutted." (*Kapraun v. Kapraun* (1957), 12 Ill. 2d 348, 146 N.E.2d 7.) Thus plaintiff would be bound by the testimony of the defendant unless and until that testimony was contradicted or rebutted. The trial court can properly refuse an instruction which incorrectly states the law. In addition, we find the recommendation of the Illinois Supreme Court Committee on Jury Instructions to be very persuasive. The Committee specifically recommended that no instruction be given that certain witnesses need not be believed or were less credible than others. (IPI Civil No. 2.02 (2d ed. 1971).) The supreme court requires that IPI instructions shall be used unless it is determined that the instruction does not accurately state the law. (Ill. Rev. Stat. 1977, ch. 110A, par. 239.) Furthermore, the wisdom of this particular pattern instruction has been endorsed by the courts. (*Zanter v. Hough* (1962), 35 Ill. App. 2d 72, 181 N.E.2d 831.) The effect of the tendered instruction is to caution the jury that the section 60 witness is not credible and need not be believed. Such an instruction is inconsistent with IPI Civil No. 2.02 (2d ed. 1971). We find no error in the trial court's refusal to give plaintiff's tendered instruction. The cases cited by plaintiff are factually distinguished in that none deal with instructions under section 60.

Another jury instruction tendered by plaintiff was refused by the court. That instruction read as follows:

"If you find the issues for Plaintiff, the amount of time involved in his finding purchasers has no bearing on the amount of his commission."

Plaintiff contends that the amount of commission claimed was a psychological barrier in the minds of the jury for plaintiff to overcome,

particularly when the amount of time he devoted to producing the prospective purchasers was less than five hours. The trial court did agree to charge the jury with an instruction which reads as follows:

"If you decide for the Plaintiff on the question of liability and against the Defendant, you must then fix the amount of money which you find the Defendant agreed to pay the Plaintiff and assess that amount to the Plaintiff as damages against Defendant."

The trial court concluded that the refused instruction was repetitive and "would be somewhat confusing to the jury." Rejection of repetitive instructions which would tend to confuse rather than enlighten the jury is not unprecedented, and we cannot say that the trial judge erred in the instant case. *Manion v. Chicago, Rock Island & Pacific Ry. Co.* (1956), 12 Ill. App. 2d 1, 138 N.E.2d 98; *Coal Creek Drainage & Levee District v. Sanitary District of Chicago* (1929), 336 Ill. 11, 167 N.E. 807.

Plaintiff's final objection on appeal is that the trial court erred in admitting into evidence self-serving, out-of-court statements made previously by defendant. When defendant testified in his own behalf, he was permitted to testify that he had discussed with his wife his previous listings of the real estate in question with Ufkes and with Yongmeyer's salesman, and also that he had no conversation with his wife concerning Hackett as a broker. Plaintiff's objection was that such evidence was self-serving and hearsay. We are reminded that "virtually all evidence is offered because it tends to support the position of the party offering it" (Hunter, Trial Handbook for Illinois Lawyers, ch. 76, §5 (4th ed. 1972)), and to that extent virtually all evidence is self-serving. "The vital objection to the admission of this kind of evidence is its hearsay character; the phrase 'self-serving' does not describe an independent ground of objection." (29 Am. Jur. 2d *Evidence* §621 (1967).) "Since the real objection to self-serving statements is their hearsay character, and since even hearsay is admissible under exceptions to the general rule of exclusion, declarations may be admitted into evidence under some circumstances even though they are self-serving." (29 Am. Jur. 2d *Evidence* §622 (1967).) For example, where self-serving declarations were a part of *res gestae*, one of the exceptions to the hearsay rule, those declarations were held admissible into evidence. *Werdell v. Turzynski* (1970), 128 Ill. App. 2d 139, 262 N.E.2d 833.

Another exception to the hearsay rule is the declaration of state of mind. In the instant case, the intent or state of mind of the parties is relevant to the formation of a contract. Thus, declarations as to defendant's intent to contract or state of mind would be relevant to the issues before the court. Where the state of mind of a person at a particular time is relevant to a material issue in the case, his declarations made at a time when no motive to misrepresent existed are admissible as proof of

that issue, even when not made in the presence of the adverse party. (*Wilkinson v. Service* (1911), 249 Ill. 146, 94 N.E. 50.) Although such statements are admissible only for the limited purpose of proving state of mind and not for the purpose of proving the facts stated (*Wilkinson v. Service*), a party cannot complain that such evidence is admitted generally unless he requests the court to limit its application (*Brodie v. Lewistown* (1911), 164 Ill. App. 335). Both authorities cited by plaintiff in his brief, *Owen v. Pret' A Porter Boutique, Inc.* (1973), 15 Ill. App. 3d 438, 302 N.E.2d 672, and *George J. Cooke Co. v. Fred Miller Brewing Co.* (1925), 316 Ill. 46, 146 N.E. 459, recognize this rule of limited admissibility. Furthermore, most of the statements objected to were uttered by the defendant out-of-court and testified to by the defendant himself as an in-court witness. Thus, most of the statements objected to are not hearsay at all. We rely on these authorities in holding that no error occurred in the admission of the declarations of state of mind.

While plaintiff also urges the accumulative error rule of *Clarquist v. Kirschenman* (1977), 55 Ill. App. 3d 76, 370 N.E.2d 840, inasmuch as we have found no error in the trial court proceedings, the rule is not applicable.

For the reasons above stated the judgment of the Circuit Court of Hancock County is affirmed.

Affirmed.

STENGEL and BARRY, JJ., concur.