ANTHONY BROWN, Plaintiff-Appellee, *v.* G & M DISTRIBUTORS, INC., Defendant-Appellant.

Third District   No. 3—83—0244

Opinion filed March 9, 1984.—Rehearing denied April 11, 1984.

436

BARRY, J., specially concurring.

Duncan B. Cooper III, of Heyl, Royster, Voelker & Allen, of Peoria, for appellant.

Joseph T. McGuire, of Perz and McGuire, of Chicago, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

This case arises from a collision between a car driven by an employee of the defendant, G & M Distributors, Inc. (G & M), and a motorcycle driven by the plaintiff, Brown. The collision occurred at the intersection of Fremont and Henderson streets in Galesburg. G & M's car was partially in the left eastbound lane of Fremont and partially in the left westbound lane of Fremont while attempting to make a left turn onto Henderson in order to go north. Two cars in the left westbound lane of Fremont were unable to proceed because G & M's car was partially in their lane. Brown was in the right westbound lane of Fremont traveling west. Brown was struck by G & M's car upon entering the intersection. There was testimony which suggests that Brown was traveling between 20 to 35 miles per hour into the intersection and did not slow down as he entered the intersection. Also, there was testimony that G & M's car did not have its left-turn signal turned on. A jury found G & M's driver negligent, but also found Brown 10% contributory negligent. G & M raises six issues on appeal.

In the first issue, G & M asks whether the jury was properly instructed. G & M notes the trial court refused to include in the jury instructions language from three sections of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, pars. 11—601, 11—701, 11—801, respectively). It is reversible error to refuse to give an instruction which is supported by some evidence when the omission deprives the party tendering the refused instruction of a fair and impartial trial. (*Malavolti v. Meridian Trucking Co.* (1979), 69 Ill. App. 3d 336, 344; *Mooney v. Etheridge* (1978), 65 Ill. App. 3d 847, 850.) G & M contends that "the failure to instruct the jury properly with respect to applicable statutory provisions denied the defendant a fair trial in that the jury, if properly instructed, could have concluded that there was either no fault on the part of the defendant or that there was a greater percentage of fault attributable to the plaintiff."

The instant case does not involve instructions which entirely omit any reference to statutory duties. Rather, here, the lower court used selected passages of three sections of the Illinois Vehicle

Code, sections 11—601, 11—701 and 11—804 (Ill. Rev. Stat. 1981, ch. 95½, pars. 11—601, 11—701, 11—804), respectively, proffered by Brown, but refused to use passages of sections 11—601, 11—701 and 11—801 proffered by G & M. The trial court gave plaintiff instruction No. 13, based upon section 11—601(a), which provided as follows: "No vehicle may be driven upon any highway in this State at a speed which is greater than reasonable and proper with regard to traffic conditions, the use of the highway, or endangers the safety of any person or property." (Ill. Rev. Stat. 1981, ch. 95½, par. 11—601(a).) G & M objected because the instruction omitted the following language of section 11—601: "The fact that the speed of a vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed when approaching and crossing an intersection ***. Speed must be decreased as may be necessary to avoid colliding with any *** vehicle on or entering the highway in compliance with legal requirements and the duty of all persons to use due care." (Ill. Rev. Stat. 1981, ch. 95½, par. 11—601(a).) G & M's instruction No. 16 contained the above-quoted language. The omitted passage explicitly creates a duty of all drivers to slow down upon entering an intersection under certain circumstances. The trial court refused to use the statutory language because the court believed no such duty existed. "Where an instruction is peremptory it must inform the jury of every material question of fact in controversy, and *** should be framed *** so as to properly inform the jury of its legal effect." (*Ryan v. Monson* (1961), 33 Ill. App. 3d 406, 422.) In the instant case, the court failed to instruct the jury that every driver (*i.e.*, Brown) has a duty to decrease speed when approaching and crossing an intersection as may be necessary to avoid colliding with another vehicle and that the failure to slow down, under the circumstances of this case, is a breach of that duty which may be considered with other facts and circumstances in determining extent of a party's negligence. Therefore, the plaintiff's instruction No. 13 was improper.

■■■ G & M also objected to plaintiff's instruction No. 12, based upon section 11—701, which provided as follows: "Upon all roadways of sufficient width, a vehicle shall be driven on right half of the roadway ***." (Ill. Rev. Stat. 1981, ch. 95½, par. 11—701(a).) Brown argues that this was an appropriate instruction because the statute "obligated [the driver of G & M's] car to keep to the right of the center of the roadway. The jury could have found [the driver] violated that statute and that violation could have been negligence." G & M points out that subsection (c) of section 11—701 explicitly exempts a driver from the above obligation and allows a driver to cross the center line

to make a left turn. Consequently, the instruction submitted by the court could have allowed the jury to find that G & M's driver violated the statute, when in fact, the driver did not violate the law. G & M also argued to the trial court that portions of section 11—801 should have been read to the jury. Section 11—801 explicitly instructs a driver to occupy the extreme left lane when preparing to turn left. Plaintiff's instruction No. 12 incorrectly states the law and undoubtedly misled the jury. Therefore, the instruction was also improper. (*Graves v. Wornson* (1978), 56 Ill. App. 3d 873, 879.) We have reviewed the record and find no other given instructions which could have corrected the omissions and misstatements in plaintiff's instructions Nos. 12 and 13. Consequently, the errors are reversible.

■ Before turning to the second issue, this court would like to comment on Brown's arguments that G & M's car had no right to be in the intersection because section 11—804 states that no turn can be made without a turn signal and that the green light gave Brown "the right of exclusive possession of the intersection." Therefore, Brown concludes, Brown was under no duty to look out for other cars or to slow down. To begin, we are unaware of any law which grants a "right of exclusive possession" of an intersection under any circumstances and Brown does not cite any such law to this court. The court in *Ryan v. Monson* (1961), 33 Ill. App. 2d 406, 422, has noted " ' "it has been held consistently that a right of way is not an absolute right and it cannot be asserted regardless of circumstances, distance, or speed." ' " Brown's arguments and conclusion, above, cannot be accepted by this court.

■ The second issue is whether the trial court ruled incorrectly on certain objections to evidence and argument. Because the reversal based upon the first issue necessitates a new trial, the complained of errors may not again arise. However, to be sure, we shall evaluate the questions and comments of Brown's attorney. Brown's attorney, despite several sustained objections by G & M, repeatedly questioned investigative officer Kirby concerning the failure of certain occurrence witnesses to inform Officer Kirby of the speed of Brown's motorcycle as it entered the intersection. Under similar circumstances, in *Morgan v. Rogers* (1975), 30 Ill. App. 3d 346, 351, the court found counsel's conduct wholly indefensible and not in good faith because the jury could have been led to believe the objectional information was harmful to opposing counsel's case. Moreover, in the instant case, none of the occurrence witnesses had yet testified in the trial. Brown should not have been allowed to impeach testimony that was not yet presented to the jury. Brown, on appeal, attempts to justify the questions as

necessary to counteract misconduct of G & M in the opening statement, wherein G & M's counsel told the jury they would be presented with testimony that Brown traveled at 30 to 50 miles per hour. Since the case had been tried once before, G & M knew there would be no such testimony. G & M's attorney explained that the statement was the result of a typographical error in his notes, and apologized to the jury for the error during closing argument. Courts have allowed otherwise improper comments during closing argument where the comments were invited by opposing counsel's own improper statements during closing arguments. However, we have not been made aware of any decision which allowed an attorney to ask improper questions and make improper comments during the questioning of witnesses in order to counteract a misstatement made by opposing counsel during opening statement.

G & M also objected to comments made by Brown's attorney during G & M's questioning of Mr. Mason, a passenger on Brown's motorcycle. G & M asked of Mason, "You are not sure whether or not he was even moving?" Brown's attorney's objection was "I object to that; your Honor he has given him his answer. He tried to shut out the horror of the impending death." The comment of "impending death" appears to be an improper attempt to prey upon the emotions of the jury. We do not subscribe to Brown's explanation that the comments were simply excusable manifestations of "human emotions involved in the exchange."

■ Lastly, the record contains an interesting colloquy wherein Brown's attorney attempted to impeach Mr. Strader with a prior statement. G & M demanded that Brown lay the proper foundation by apprising the witness of the time and place of the statement, the names of persons present and the statement. In the presence of the jury, Brown's attorney glibly retorted that "the witness may know exactly what I am talking about. If he does, I don't have to do all the legal stuff. Let's get down to the human part of this." Brown's attorney's statement was not simply improper, it was inexcusable. The trial court did not and could not have rectified the impropriety of the statement by admonishing the jury. In the presence of judge, jury and observers, Brown's attorney ridiculed a basic aspect of a trial—the rules of evidence.

The third issue is whether the conduct of Brown's attorney in closing argument was improper. Brown's attorney argued that "the doctor was making sawdust out of a healthy bone." The doctor drilled a few holes into Brown's hip in order to insert pins to support his injured hip. The statement was improper because it did not state or re-

fer to facts in issue and served to unfairly bias the jury by appealing to the emotions of the jury.

■ Issues four, five and six can be decided summarily. They are stated as follows: (4) Whether certain impeaching evidence was improperly excluded; (5) Whether G & M's attorney should have been able to use a flip chart in closing argument; (6) Whether G & M's offer of proof with respect to the impeaching of Terry Mason should have been accepted and defendant should have been allowed to cross-examine Terry Mason about the telephone conference he had with paralegal O'Connor. The scope of cross-examination and the use of a flip chart during closing argument are matters within the sound discretion of the trial court. After reviewing the record, we cannot find that the trial court abused its discretion.

For the reasons set forth above, the judgment of the lower court is reversed and the cause is remanded for a new trial.

Reversed and remanded.

SCOTT, J., concurs.

JUSTICE BARRY, specially concurring:

I agree with the results reached and most all of the observations of the majority, and, by my view, a fair trial was impossible. Proper intervention by the court may have cured the adverse situation and circumstances presented early in the trial, but I am at a loss to determine how so, short of ordering a mistrial early on.

I would place the primary blame upon counsel for the defense. The defense obviously has known the facts of this case very well for some eight or nine years; the case has been tried fully before, appealed twice before; one of the three defense witnesses' testimony was in fact read into the record from the previous trial; and defense counsel misstated anticipated evidence in his opening statement, both with regard to plaintiff's speed and the color of the traffic light control at the intersection. I trust the defense will not introduce error so as to create another opportunity for a mistrial when this matter is retried. The plaintiff's questionable self-help tactics will then be unnecessary as a retort.

I expect the participants will recognize what is proper professional behavior during the course of the new trial. It is unfair to their clients who have paid with their time and money to do otherwise, as they have here for a span of many years.