*In re* APPLICATION OF THE COUNTY TREASURER AND *ex officio* COUNTY COLLECTOR OF COOK COUNTY (County Collector of Cook County, Applicant-Appellant, v. Ford Motor Company, Objector-Appellee).

First District (3rd Division)   No. 86—1931

Opinion filed February 3, 1988.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Mark R. Davis and Donald M. Devlin, Assistant State's Attorneys, of counsel), for appellant.

Tully & Weinstein, of Chicago (Thomas M. Tully, Donald A. McCarty, and Patrick T. Driscoll, Jr., of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Applicant-appellant, the county collector of Cook County (Collector), appeals the trial court's finding that its assessment of real property owned by objector-appellee, Ford Motor Company (Ford), was constructively fraudulent as being excessive. The Collector asserts that Ford failed to prove by clear and convincing evidence that its assessment was constructively fraudulent. The Collector further asserts that the trial court committed reversible error by considering as evidence prior settlements and a subsequent assessment which were outside the record.

For the reasons stated below, we reverse the judgment of the circuit court which found the original assessment fraudulent.

The evidence at trial indicated the following. Ford paid real estate taxes for 1981 under protest for its real estate located at 1000 East Lincoln Highway, Chicago Heights, Illinois. The real estate covers approximately 133 acres and is improved with an automobile stamping plant. The assessor of Cook County (Assessor) assessed the subject property as of January 1, 1981, in the sum of $13,626,634. The assessment corresponds to a market value of the property of $34,066,585. The Ford property is a class V parcel under the Cook County Real Property Assessment Classification Ordinance and is assessed at 40% of fair market value. Ford paid under protest $1,783,381.49 in real estate taxes on the stamping plant for 1981, claiming that the assessment was excessive and void. Ford asserted at trial that the correct market value of the stamping plant was $19.5 million.

John Shanahan, a certified real estate appraiser, testified at trial as Ford's expert witness. Shanahan made a formal inspection of the Ford property on November 17, 1980. Shanahan gave his opinion of the value of the plant based on his utilization of the three standard appraisal approaches to value—cost, income, and market data. The cost analysis resulted in a valuation of $20,730,000. This value was

the result of estimating the reproduction cost of the building as of the date of appraisal, deducting therefrom accrued depreciation, and adding the value of the land. The income approach resulted in a valuation of $17,870,000. This approach involves an estimate of rental income from the property, which estimate is utilized to develop an opinion of value regarding an income stream over the foreseeable future. Shanahan stated that he placed the least reliance on this approach to value since most properties the size of the Ford plant are owner-occupied and therefore do not produce rental income.

The market data approach resulted in a valuation of $19.5 million. The market data approach seeks to find sales of properties that are as similar to the subject property as possible and adjust the sales for variances in time of sale, location and physical characteristics of the property, and financial conditions of the sales. Then the data is reduced to a unit of comparison, such as price per square foot of building area. Shanahan gave the most weight to this approach in arriving at his valuation of the property.

Shanahan stated that while his appraisal is dated November 17, 1980, each of the three valuation amounts he arrived at regarding the property was effective both as of November 17, 1980, and as of January 1, 1981, the date pertinent to the instant case. After considering all three approaches to valuation, Shanahan opined that the value of the Ford property as of January 1, 1981, was $19.5 million.

After Ford rested its case, the Collector moved for a directed verdict, asserting that Ford failed to meet its burden of proving that the assessment was constructively fraudulent. The trial court denied the motion.

The Collector then called Bruce Brenner, a professional real estate appraiser, as its expert. Brenner was called upon in late 1984 to render a preliminary opinion of value of the subject property. In late 1984, Brenner made exterior inspections of the Ford plant and reviewed the Shanahan appraisal and market data. Brenner performed a complete inspection of the property on May 1, 1985.

Brenner utilized the three accepted approaches to value—cost, income, and market data—in valuating the property. He relied most heavily on the market data approach in reaching a final opinion of value. The cost approach analysis resulted in a value of $30 million. The income approach analysis resulted in a value of $24,569,986. Brenner stated that he gave the least weight to the income method since properties the size of the Ford plant are typically owner-occupied rather than rented. The market data approach resulted in a value of $28 million. After considering all three methods of valuation, Bren-

ner determined that the value of the plant as of January 1, 1981, was $28 million. This sum did not include the value of cranes worth between $1.5 million and $2 million.

The Collector then called Arthur Goepp, who was employed by Ford as a property assessment evaluator. Goepp testified that he had prepared a memorandum of value of the Ford stamping plant as of January 1980. Goepp described the document as providing an "advisory in-house suggestion of value for our local tax representative in this area to use in talking to the assessor." Goepp indicated in his report that while he considered all three approaches to value, he utilized only the cost approach to value, "in order to obtain a value by using the same appraisal technique which was used by assessing authorities." Goepp's report indicates a value of the Ford plant as of January 1980 of $34,150,000.

Ford moved to strike the testimony of Goepp, asserting that since Goepp's memorandum of value pertained to 1980, it was irrelevant to a valuation for 1981, the year pertinent to the instant case. The Collector responded that Goepp's memorandum had been submitted to the Assessor's office in Ford's 1979 objection concerning the same property. The court denied Ford's motion to strike the testimony. After Goepp testified, the Collector moved to admit Goepp's report into evidence. Ford objected to its admissibility and relevancy. The court admitted the Goepp report into evidence over Ford's objection.

After hearing argument of counsel, the trial court took the case under advisement and subsequently issued a written order of findings. The order indicates that the court considered the expert appraisal witness testimony that the premises had a fair market value of $19.5 million (Ford's expert) and $28 million (the Collector's expert). The court also considered a finding by the Assessor of the market value for the property of $25 million in a tax year subsequent to 1981. Additionally, the court took judicial notice of the settlement of objections from previous tax years, which indicated a market value of $25 million for 1980 and $25,853,160 for 1979.

Based on the evidence, the court found that the presumption that an assessment based upon a market value of $34,065,582 was correct was overcome and that the Assessor presented no evidence to justify the assessment. The trial court found that the fair market value of the property as of January 1, 1981, was $22.8 million. The court relied primarily on the market and cost approaches in determining the value. Further, the court found that the market value as indicated by the assessment was so excessive with respect to the market value found by the court as to constitute constructive fraud, and that Ford

proved by clear and convincing evidence that the assessment was constructively fraudulent. The court ordered a tax refund of $589,804.34 to Ford based upon an assessment reflecting the fair market value as determined by the court.

■■■ The Collector initially asserts on appeal that Ford failed to prove constructive fraud in the assessment by clear and convincing evidence. We note that Illinois law requires that all real property shall be valued at its fair cash value, estimated at the price it would bring at a fair voluntary sale. (*In re Application of Rosewell* (1983), 120 Ill. App. 3d 369, 458 N.E.2d 121.) The county ordinance provides the same definition for "market value." (Real Property Assessment Classification Ordinance, §1(b)(2).) In reviewing a case of specific objection to an assessment, courts will presume that the assessing authority competently and honestly performed its function. (*In re Application of Rosewell* (1985), 106 Ill. 2d 311, 478 N.E.2d 343.) In order to obtain relief, the objector must show by clear and convincing evidence that the Assessor's opinion of fair market value is constructively fraudulent. (*Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 105, 306 N.E.2d 299.) Fraud in law will be inferred only where the evidence shows the property to have been grossly overvalued, the assessed valuation being reached under circumstances showing either lack of knowledge of known values or a deliberate fixing of values contrary to the known value. Only where the evidence clearly establishes that an assessment was made in ignorance of the subject property's value, on a judgment not based upon readily ascertainable facts, or on a designedly excessive basis will a finding of constructive fraud against the taxing authorities be entered. (*People ex rel. Munson v. Morningside Heights, Inc.* (1970), 45 Ill. 2d 338, 341, 259 N.E.2d 27.) Once the presumption of the validity of the assessment is overcome, it becomes incumbent upon the Assessor to produce evidence to justify the assessment. (*People ex rel. Hillison v. Chicago, Burlington & Quincy R.R. Co.* (1961), 22 Ill. 2d 88, 100, 174 N.E.2d 175.) Further, a determination of whether the Assessor has committed constructive fraud depends upon the facts and circumstances of each particular case. *People ex rel. Nordlund v. S.B.A. Co.* (1966), 34 Ill. 2d 373, 378, 215 N.E.2d 233.

■■ We hold that the trial court's finding that the assessment was constructively fraudulent is contrary to the manifest weight of the evidence. Therefore, we reverse its finding and reinstate the original assessment. (*People v. International Business Machines Corp.* (1985), 139 Ill. App. 3d 135, 487 N.E.2d 43.) We find that Ford failed to show by clear and convincing evidence that the Assessor grossly overvalued

the property or valued the property contrary to known values. Rather, the evidence supports the Assessor's finding that the property had a fair market value of $34,066,585.

■ Specifically, testimony by the Collector's expert, Bruce Brenner, indicated that the property had a value of $28 million, a sum which did not include the value of cranes worth between $1.5 and $2 million. More significantly, the report of Arthur Goepp, one of Ford's own employees, states that the property had a fair market value in 1980 of $34,150,000. We note that a statement of an agent, when made in the exercise of his duties and pertaining to matters within the scope of his authority, may constitute an admission binding on the principal which can be introduced substantively against the principal. (*Oak Lawn Trust & Savings Bank v. City of Palos Heights* (1983), 115 Ill. App. 3d 887, 450 N.E.2d 788.) Goepp's report constitutes an admission binding on Ford that the market value of the property approximated $34 million. The evidence indicates that Goepp prepared the report within the scope of his duties as a property assessment evaluator for Ford. The report itself provides that the document was prepared as an "in-house suggestion of value" for use by Ford's tax representative in talking to the Assessor. Further, the evidence indicates that Ford ratified and adopted the report as its own when it submitted the report to the Assessor's office with regard to Ford's objection to the 1979 assessment of the same property. *Oak Lawn Trust & Savings Bank*, 115 Ill. App. 3d at 896.

■ Contradictory statements of a party constitute substantive evidence against the party of facts stated. (*Guthrie v. Van Hyfte* (1966), 36 Ill. 2d 252, 222 N.E.2d 492.) Generally, any statement made by a party or on his behalf which is inconsistent with his position in litigation may be introduced into evidence against him. (*Mortell v. Insurance Co. of North America* (1983), 120 Ill. App. 3d 1016, 458 N.E.2d 922.) In the instant case, the report of Goepp was properly introduced at trial as evidence against Ford regarding the valuation of the property. By filing its 1981 objection to the property and claiming that the fair market value was $19.5 million, Ford effectively was denying its own appraisal of $34,150,000 for the property as of 1980. The evidence of Ford's appraisal for 1980 was properly used against it. Further, we note that while Goepp's report showed the value of the property for 1980, rather than 1981, the year in question, there was no evidence presented to indicate that the value of the property radically changed between 1980 and 1981. Goepp's valuation of the property for 1980 provides a reasonable indication of an approximate valuation of the property for 1981.

■ We also note that there was a marked difference in the expert opinion regarding the valuation of the subject property. Ford's expert, John Shanahan, opined that the property had a market value of $19.5 million. The Collector's expert, Bruce Brenner, opined that the property's market value was at least $28 million, not including the value of certain cranes. It has been established, however, that an assessment of property for taxation cannot be impeached by any mere difference of opinion as to its value between the assessing officers and the court. (*People ex rel. Tedrick v. Allied Oil Corp.* (1944), 388 Ill. 219, 225, 57 N.E.2d 859.) Further, in view of all of the evidence in the instant case, including Goepp's report indicating a value of over $34 million for 1980, Ford failed to show that the Assessor grossly overvalued the property.

The collector also contends on appeal that the trial court committed reversible error by considering as evidence prior settlements and a subsequent assessment which were outside the record. Since we are reversing this matter on other grounds, however, we need not address the collector's argument that the trial court improperly considered matters outside the record.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the original assessment of the property is reinstated.

Judgment reversed.

WHITE, P.J., and RIZZI, J., concur.