STEVEN C. REDMON *et al.*, Plaintiffs-Appellants, v. CYRUS AUSTIN, Defendant-Appellee.

Fifth District   No. 5—87—0506

Opinion filed September 11, 1989.

Roy C. Dripps, of Talbert & Mallon, P.C., of Alton, for appellants.

Robert G. Raleigh, of Hoagland, Fitzgerald, Smith & Pranaitis, of Alton, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiffs, Steven C. Redmon and John W. Beckman, filed an action in the circuit court of Madison County to recover damages for injuries they sustained when an automobile in which they were riding as passengers collided with an automobile driven by defendant, Cyrus Austin. Following a jury trial, a verdict was returned in favor of defendant and against each of the plaintiffs. The circuit court entered judgment on that verdict. A post-trial motion subsequently filed by plaintiffs was denied, and plaintiffs now appeal. We reverse and remand for a new trial.

The accident which gave rise to this litigation occurred in the early morning hours of April 14, 1984. The location was Highway 111 and 67 in Godfrey, Illinois, close to the entrance to the Godfrey Speedway and not far from a tavern known as Doris' 111. Plaintiffs were riding in an automobile, a 1968 Ford Mustang, driven by Rodney Walls. Redmon sat in the front seat, Beckman in the back.

The car in which plaintiffs were riding proceeded north along the highway. After crossing some railroad tracks in the area, it met and collided with an automobile driven by defendant. Defendant had just left Doris' 111 and, along with his girlfriend, Penny Shoptaw, was proceeding south down the highway. In the collision, the left front of

defendant's car hit the left side of the car in which plaintiffs were riding in the area behind the driver's door. The force of the impact was so great that the rear of plaintiffs' car was sheared off.

Help arrived on the scene promptly. It came in the form of the Godfrey Fire Protection District and the Illinois State Police. They found, miraculously, that no one had been killed in the collision. Plaintiffs were taken by ambulance to the hospital, where they were examined and later released. Both automobiles had to be towed away.

All of this is not in dispute. What is disputed, and what proved to be the primary controversy at trial, is how exactly the collision took place. Plaintiffs' theory was that defendant had not felt well at work that day, had gone out drinking that evening, and had become intoxicated. Because of his intoxication, he was unable to navigate around a curve in the road and crossed the centerline, striking the automobile in which plaintiffs were riding. Defendant, for his part, denied that he was in any way responsible for the collision. He argued that what had actually happened was that the driver of the car in which plaintiffs were riding lost control of the vehicle as it passed over the nearby railroad tracks. He claimed that the car became airborne as it drove over an incline in the road where the tracks crossed the roadway. As it landed it moved down the roadway sideways out of control. Defendant claims that he flashed his headlights and attempted to move to the shoulder of the road, but was unable to get out of the path of the oncoming vehicle.

The evidence in this case was sharply divided. Plaintiffs both testified that their car never left its lane and never went sideways down the road. Both related that defendant's automobile did not follow the roadway along the curve but instead cut over in a straight line, where it crashed. They both said that after the collision defendant appeared to be intoxicated. To support their claim, plaintiffs called as witnesses Rod Walls, the driver of their car, and Stacey Lynn Castillo, an off-duty barmaid from Doris' 111 who happened to be in the area when the accident took place. Castillo, whose younger brother was a friend of plaintiffs and Walls, testified by deposition that when she arrived on the scene, defendant's automobile was sitting partially across the centerline. Plaintiffs also called defendant as an adverse witness.

Defendant testified not only as an adverse witness during plaintiffs' case, but also as a witness on his own behalf. During his testimony he denied plaintiffs' version of what occurred. He claimed that he did not exceed the speed limit, that he did not cross the centerline, and that he was not drunk. Although he did not deny consuming alcohol that evening, he explained that he behaved as he did after the ac-

cident because he was upset, he felt dizzy, and his knee hurt. Defendant did not call his passenger, Penny Shoptaw, as a witness. His attorney claimed that he did not do so because defendant and Shoptaw were no longer seeing one another, she was not under his control, and he had been unable to contact her regarding the trial. Most of the evidence presented on behalf of defendant consisted of the testimony of Thomas L. Acker, a lieutenant with the Godfrey Fire Protection District who was present on the scene the night of the accident, and Nick Bowman, the Illinois State trooper who had been called to investigate the accident. The particulars of this testimony will be addressed, where necessary, in the discussion which follows. At this juncture, we note simply, as we have done before, that the jury ultimately returned a verdict in favor of defendant. Judgment was entered on that verdict by the circuit court, and plaintiffs' post-trial motion was denied. They now appeal.

On this appeal, plaintiffs argue that the circuit court's judgment should be reversed and the cause remanded for a new trial because of a number of errors committed by the circuit court with respect to the admission of evidence. We agree. At trial, Lieutenant Acker of the Godfrey Fire Protection District was allowed to testify, over objection, that he had been told by someone he "believed to be one of the occupants" of the automobile in which plaintiffs were riding that "the driver had lost control of the vehicle coming across the railroad tracks." Plaintiffs argue that this testimony constituted mere hearsay and should not have been permitted. We agree.

■■ ■ As a general rule, an out-of-court assertion offered to prove the truth of the matter asserted constitutes hearsay and is not admissible. (*Tarshes v. Lake Shore Harley Davidson* (1988), 171 Ill. App. 3d 143,153, 524 N.E.2d 1136, 1142.) This is just such a statement. Defendant nevertheless argues that admission of the statement was proper because it fell within an exception to the hearsay rule. Specifically, he claims that the statement constituted an admission or declaration against interest. The problem with this theory is that Acker admitted on cross-examination that he did not, in fact, know who had given him the statement. At trial, the following exchange took place between Acker and counsel for plaintiffs:

"PLAINTIFFS' COUNSEL: Sir, you don't know for a fact that they were actually had been [*sic*] occupying that car, do you?

ACKER: No, sir, not for a fact.

PLAINTIFFS' COUNSEL: And you can't tell the jury as you're sitting here today who you talked to at that time?

ACKER: That's very true."

Since the identity of the declarant or declarants is unknown, there is simply no basis for characterizing the statement in question as an admission by a party opponent or a declaration against interest.

■ Defendant also argues that the statement was properly admitted because its purpose was not to prove the facts stated but simply to show state of mind. (See *Hackett v. Ashley* (1979), 71 Ill. App. 3d 179, 186, 389 N.E.2d 246, 251.) This claim is completely without merit. The case upon which defendant relies for support deals with a declaration by a party, the defendant, as to his intent to enter into a contract. While state of mind may be relevant where there is an issue as to whether a contract was formed (71 Ill. App. 3d at 186, 389 N.E.2d at 251), we fail to see, and defendant has not explained, how the state of mind of the declarant or declarants here, whose identity is admittedly unknown, could possibly have any bearing on defendant's liability to the passengers of the other automobile involved in the accident.

■ ■ We likewise do not believe that admission of the statement can be justified under the spontaneous declaration exception to the hearsay rule. For this exception to apply there must be (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. (*Tarshes v. Lake Shore Harley Davidson* (1988), 171 Ill. App. 3d 143, 153, 524 N.E.2d 1136, 1142.) In this case, there is simply no factual basis for determining that this exception is applicable. There was, of course, an occurrence which could have produced a spontaneous and unreflecting statement by someone who experienced it or witnessed it, and the statement here did relate to the circumstances of the accident. The problem again, however, is that we do not know who made the declaration. All we know is that they were on the scene when Acker arrived. We cannot be sure that they actually witnessed it themselves. Moreover, the statement was not made until sometime after the accident took place. Thus, the opportunity for fabrication was present.

Plaintiffs next argue that the circuit court erred in allowing Acker to testify, over objection, as to the cause of gouge marks found in the pavement at the accident scene. At trial Acker identified various photographs of the accident scene which he took after his arrival there on the night in question. One of those photographs showed gouge marks in the asphalt in the southbound lane, the lane in which defendant had been driving. Acker did more than identify the marks as gouge marks, however. He was also allowed to explain to the jury

that such marks result when, during a vehicular crash, the vehicle is forced downward and sharp and rounded points underneath it dig into the highway. The purpose of this testimony was to buttress defendant's theory as to point of impact. Although the circuit court would not allow Acker to refer specifically to "point of impact" as such, the clear import of his testimony was that, contrary to plaintiffs' claim, the two vehicles had collided in defendant's lane and that defendant had not crossed over the centerline to strike the automobile in which plaintiffs were riding.

To the extent that Acker's testimony went beyond a discussion of the factual observations he made at the scene and extended to a discussion of what caused the gouge marks and, by implication, where the vehicles collided, it was in the nature of reconstruction testimony, and Acker was being presented as a reconstruction expert. (See *Ralston v. Plogger* (1985), 132 Ill. App. 3d 90, 98-99, 476 N.E.2d 1378, 1384.) Without reaching the questions of whether Acker was qualified to give reconstruction testimony or whether this was a case in which reconstruction testimony should even be permitted, we agree with plaintiffs that Acker should not have been permitted to give testimony as a reconstruction expert under the circumstances present here.

■■ ■ Supreme Court Rule 220(b)(1) requires disclosure of an expert witness either at the first pretrial conference or within 90 days after the substance of the expert's opinion first becomes known to the party who intends to call such a witness, whichever is later. (107 Ill. 2d R. 220(b)(1).) In addition, the rule provides that the court "shall enter an order scheduling the dates upon which all expert witnesses, including rebuttal experts, shall be disclosed." (107 Ill. 2d R. 220(b)(1).) In this case the circuit court did order "all parties *** to disclose any expert they intend to call in this matter on or before the 12th January [*sic*], 1987." The record before us indicates that defendant did not comply with this court order and did not even reveal Acker's existence until after the trial commenced. Supreme Court Rule 220(b)(1) expressly provides that "[f]ailure to make the disclosure required by this rule or to comply with the discovery contemplated herein will result in disqualification of the expert as a witness." (107 Ill. 2d R. 220(b)(1).) In view of this unequivocal language, we believe that the circuit court erred when it overruled plaintiffs' objection to Acker's reconstruction testimony. See *Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140,163, 507 N.E.2d 1213, 1232.

■■ It is axiomatic that error in the exclusion or admission of evi-

dence does not require reversal where there has been no prejudice or where the result of the trial has not been materially affected. (*Young v. City of Centreville* (1988), 169 Ill. App. 3d 166, 176, 523 N.E.2d 621, 628.) In this case, however, we believe that reversal is required. Both the hearsay statement related by Acker and his improper reconstruction testimony related directly to the central controversy in this case, namely, how the accident took place. Because, as we have previously indicated, the other evidence in the case was so close, one cannot seriously contend that the improperly admitted evidence did not materially affect the outcome of the trial. Accordingly, the circuit court's judgment must be reversed and the cause remanded so that a new trial may be held.

In view of this disposition, we need not address plaintiffs' additional contention that the circuit court's judgment was contrary to the manifest weight of the evidence. Because a new trial must be held, however, there are two additional matters we shall address in order to give guidance to the trial court and the parties on remand. At trial plaintiffs tendered the following instruction which was refused by the circuit court:

"If a party to this case has failed to offer evidence or to produce a witness within his power to produce, you may infer that the evidence or testimony of the witness would be adverse to that party if you believe each of the following elements:

1. The evidence or witness was under the control of the party and could have been produced by the exercise of reasonable diligence.

2. The evidence or witness was not equally available to an adverse party.

3. A reasonably prudent person under the same or similar circumstances would have offered the evidence or produced the witness if he believed the evidence, or the testimony, would be favorable to him.

4. No reasonable excuse for the failure has been shown."

This instruction is Illinois Pattern Jury Instructions, Civil, No. 5.01 (2d ed. 1971) (hereinafter IPI Civil 2d No. 5.01). Plaintiffs claim that the circuit court erred in refusing to submit this instruction to the jury because of defendant's failure to call Penny Shoptaw as a witness or to explain his failure to call her. As we noted at the outset of this order, Penny Shoptaw was defendant's girlfriend and was a passenger in his vehicle at the time of the accident in question. Given this relationship, plaintiffs contended that if Shoptaw's version of the accident had correlated with defendant's, defendant would have called her for

trial. Although defendant's attorney explained to the court the steps which he had taken, unsuccessfully, to locate Shoptaw, he did not adduce any testimony to substantiate those efforts. For this reason, plaintiffs argue that the circuit court was not justified in refusing the instruction. We cannot accept this analysis.

■ Whether IPI Civil 2d No. 5.01 should be given is within the sound discretion of the trial court, and a reviewing court will reverse only where a clear abuse of discretion appears of record. (*Tonarelli v. Gibbons* (1984), 121 Ill. App. 3d 1042, 1046-47, 460 N.E.2d 464, 468.) We note, however, that the instruction can be given only when the party seeking to use the instruction has offered evidence that the absent or missing witness was under the other party's control and not as available to it as to the other party. (*J.L. Simmons Co. v. Firestone Tire & Rubber Co.* (1984), 126 Ill. App. 3d 859, 868, 467 N.E.2d 327, 334.) In this case, plaintiffs, who tendered the instruction, offered no evidence that Penny Shoptaw was under defendant's control. All we know from the record is that Shoptaw had once been defendant's girlfriend, but that was long before the trial commenced, and the relationship had apparently ended. Defendant's attorney represented to the court that Shoptaw was not related to defendant by blood or marriage, and he did not know where she was. This was so even though defendant's attorney and his process server had attempted to track her down. Area police were contacted, as was a neighbor and a relative, all to no avail. Defendant's attorney advised the court that defendant and Shoptaw "haven't seen each other since this accident. *** They haven't seen each other for three and a half years."

The trial court indicated that he wanted defendant's attorney and his process server to take the stand and testify under oath regarding these matters. This was never done. It was not required to be done either in order to justify refusal of the instruction. Since plaintiffs offered no evidence suggesting that Shoptaw was under defendant's control at the time of trial, defendant was under no obligation to adduce any evidence of his own on the subject.

■ One final matter we must take up concerns a remark made by defendant's attorney during his opening argument. During that argument defendant's counsel indicated to the jury that the testimony would show that the car in which plaintiffs were riding at the time of the accident had two bald tires. Plaintiffs' attorney objected to this reference on the grounds that it violated one of the court's pretrial orders. The objection was overruled, and plaintiffs' attorney then was permitted by the court to make a brief record with respect to his ob-

jection. When this was done, defendant's attorney resumed his opening statement by saying, "Enough of the legal mumbo jumbo. Now, let's get back to the point." This remark was improper and inexcusable. It denigrated basic trial procedures which are essential to the orderly conduct of litigation under our adversarial system of justice. Counsel are admonished that if such remarks are repeated in the presence of the jury on retrial, reversible error may result. See *Brown v. G & M Distributors, Inc.* (1984), 122 Ill. App. 3d 435, 440, 461 N.E.2d 95, 99.

For the foregoing reasons, the judgment of the circuit court of Madison County is reversed, and this cause is remanded for a new trial.

Reversed and remanded.

GOLDENHERSH, J., concurs.

PRESIDING JUSTICE WELCH, dissenting:

For the reasons which follow, I dissent. I do not agree that Lieutenant Acker's testimony that he had been told by one or two young men whom he believed to be occupants of the automobile in which plaintiffs were riding that "the driver had lost control of the vehicle coming across the railroad tracks" constituted inadmissible hearsay. Instead, I believe that the out-of-court statement was admissible under the exception to the hearsay rule for admissions of a party-opponent. Lieutenant Acker's testimony sufficiently established that the statement was made by one or both plaintiffs, or that it was made in the presence of, and acquiesced in by, both plaintiffs.

Generally, any statement made by a party or on his behalf which is inconsistent with his position in litigation may be introduced into evidence against him. (*In re Application of County Treasurer & ex officio County Collector* (1988), 166 Ill. App. 3d 373, 379, 519 N.E.2d 1010, 1014.) Admissions may also be implied from conduct, as where a party remains silent where there is an opportunity to speak and the circumstances properly and naturally call for the party to speak. (*Casey v. Burns* (1955), 7 Ill. App. 2d 316, 325, 129 N.E.2d 440, 445.) Thus a party's silence may be admissible as evidence of admission by that party of the truth of what another has said. *Friedland v. Allis Chalmers Co. of Canada* (1987), 159 Ill. App. 3d 1, 7, 511 N.E.2d 1199, 1204.

In the instant case, Lieutenant Acker testified that when he arrived on the scene of the accident, defendant and his passenger were

being tended by the ambulance attendants. Acker approached the Mustang in which plaintiffs had been passengers. There were three young men at the Mustang.

At this point in Acker's testimony, plaintiffs' counsel objected and defendant made an offer of proof. Acker testified in offer of proof that the three young men were standing around the Mustang. One of the young men stated that he had been in the back seat of the Mustang when the accident occurred. One or possibly two of the three men stated that the driver of the Mustang lost control of the car as it came across the railroad tracks. Acker testified that all three men indicated by their actions and words that they had been in the Mustang when the accident occurred. All three men were present during the conversation and all heard it. Acker testified that at the time of trial he could not identify any of the three young men and he did not know for sure "who told [him] what out there." The trial court allowed Acker to testify to his conversation with the three young men over plaintiffs' objection.

Acker testified before the jury that shortly after he arrived at the accident scene he had a conversation with the occupants of the Mustang. One of the men stated he had been in the back seat of the Mustang. One of the men stated that the driver of the Mustang had lost control of the vehicle as it came across the railroad tracks. On cross-examination, Acker stated that he did not know for a fact that the three men had been occupants of the Mustang.

I think this evidence is sufficient to show that the statement that the driver of the Mustang lost control of the vehicle as it came across the railroad tracks was made either by, or in the presence of, plaintiffs and that neither plaintiff objected to the statement when it was made. The statement was properly admitted over plaintiffs' objection as an admission against interest of a party-opponent.

I also do not agree with the majority that Lieutenant Acker's testimony pertaining to the gouge marks in the pavement constituted expert reconstruction testimony. Lieutenant Acker testified regarding photographs he had taken at the accident scene on the night of the accident. One photograph, defendant's exhibit No. 11, showed the position of defendant's vehicle on the shoulder of the southbound lane following the accident. Lieutenant Acker identified a black substance on the roadway, as shown in the photograph, as engine-type fluid which begins in defendant's southbound lane and ends at the engine area of defendant's vehicle on the southbound shoulder. Lieutenant Acker also pointed out on the photograph an area of scrape marks and gouge marks in the asphalt of the roadway in defendant's south-

bound lane. Defendant's counsel asked Lieutenant Acker what causes gouge marks, and plaintiffs' counsel objected, arguing that defendant was improperly asking for expert testimony. Plaintiffs' objection was overruled.

Defendant's counsel asked, "[W]hat causes gouge marks like that in the highway? What does that indicate to you when you see marks in the highway?" Lieutenant Acker responded, "These are caused by the vehicle being forced downward at the point of impact." Plaintiffs' counsel objected and moved to strike. The trial court struck "the last portion of his answer" but allowed "the first part" to stand. Plaintiffs' counsel responded, "I don't object to the first part, Judge."

Lieutenant Acker went on to explain that gouge marks are made during a vehicular collision when the vehicle is forced downward and sharp and rounded points of the underside of the vehicle dig into the highway. Lieutenant Acker also identified tire skid marks in the photograph which begin in defendant's southbound lane and end at defendant's vehicle on the southbound shoulder.

I do not believe that this testimony amounts to expert reconstruction testimony. The cause of gouge marks, like the cause of skid marks, is not a subject outside the common knowledge of an average juror. It is not, therefore, properly the subject of expert testimony. (Hernandez v. Power Construction Co. (1978), 73 Ill. 2d 90, 98-99, 382 N.E.2d 1201, 1205.) Lieutenant Acker did not reconstruct the accident in any respect. His reference to point of impact was stricken. He did not testify as to what caused the gouge marks in this particular case. Instead, he simply explained what he meant by the term "gouge marks."

Finally, although the majority found it unnecessary to address the question of whether the verdict was against the manifest weight of the evidence, I think, after reviewing the record, that the jury's verdict in favor of defendant was not against the manifest weight of the evidence. As the majority points out, plaintiffs and defendant had very different versions of how the accident occurred and who was at fault. However, all of the physical evidence presented at trial indicated that defendant's vehicle did not cross the center line of traffic and that, in fact, defendant's vehicle was in its own lane of traffic at the time of impact. There was no physical evidence presented to show that defendant's vehicle had crossed into plaintiffs' lane of traffic. In any event, all of the evidence was presented to the jury, which returned a verdict in favor of defendant.

A verdict is against the manifest weight of the evidence only when an opposite conclusion is clearly apparent or when the finding

232

of the jury appears arbitrary and unsubstantiated by the evidence. (*Holmes v. Sahara Coal Co.* (1985), 131 Ill. App. 3d 666, 674, 475 N.E.2d 1383, 1389.) A reviewing court should not overturn a jury's verdict unless, considering all the evidence in the light most favorable to the party who prevailed at trial, the jury's conclusion is palpably erroneous and wholly unwarranted. *Holmes*, 131 Ill. App. 3d at 674, 475 N.E.2d at 1389.

After carefully reviewing the record in this case, I do not think that an opposite verdict is clearly apparent. In fact, the jury's verdict in favor of defendant appears to be well supported by the evidence. It is not against the manifest weight of the evidence.

For the foregoing reasons, I dissent from the majority opinion reversing the jury's verdict and remanding this cause for a new trial.